## Albert R. Wildey v. Fractional School District Number One of Paw Paw and Antwerp.

*Building contract construed.* Under a contract for the construction of a school building, which provides that the work shall be "executed in the best and most workman-like manner, and agreeably to such directions as may be given from time to time" by the architect, or his assistant [the local superintendent of the work, employed by the district], "and to his full and entire satisfaction, without reference thereon to any other person;" that all claims for alterations or extras were to be judged of, determined, and adjusted "solely by the super intendent," and that payment should be made on the certificate of the archi-

tect, or superintendent, partly on monthly estimates, from time to time, and the balance on completion of the building; whatever passed under the inspection of the superintendent as the work progressed, and was in good faith approved by him, expressly or by implication, was not open to objection on the part of the district afterwards; and the certificate of the architect was not a condition precedent to the right of the contractor to recover for the work so approved.

*Contract: Performance: Variances.* Variances from such a contract which have been treated at the time as immaterial by both parties will not afterwards be held to be departures from the contract; and what was regarded at the time as substantial compliance with its terms, constitutes a performance in law.

*Building contract: Departures: Recoupment.* Intentional departures from such contract, made without the consent, express or implied, of the district officers, architect, or superintendent, and in disregard of their directions, would not bar a recovery for other portions of the work which were duly approved; but the district would have a right to insist on the proper changes in the work to make it conform to the contract, and to recover any damages sustained by the failure.

*Building: Acceptance: Taking possession: Payments: Waiver.* The mere fact of taking possession and occupying the building by the district for their schools, after the time when, by the contract, it was to be completed, would not of itself constitute an acceptance which should bar any claim on the part of the district to insist upon a rectification of any faults, or the payment of any damages they may have suffered by the failure in strict compliance; but the fact of making payments afterwards without objection, the manner of taking possession, and whether with or without objection to any variation, would have an important bearing on the question of fact, whether any rights were intentionally waived, or whether there was a purpose to accept the building as completed in substantial compliance with the contract.

*Contract not performed: Recovery on common counts: Recoupment.* As to the right of a party in general to recover upon the common counts, subject to a recoupment of damages, where he has not complied strictly with his contract, *Allen v. McKibbin, 5 Mich., 449,* is referred to, and approved.

*Heard July 12 and '13.        Decided October 8.*

Error to Van Buren Circuit.

*Arthur Brown* and *H. F. Severens,* for plaintiff in error.

*Balch, Smiley & Balch,* for defendant in error.

COOLEY, J.

This action is brought to recover for the construction of a school building for the defendant. The declaration contained a special count on the contract, in which it was averred that the building was completed "in substantial conformity with all the terms and conditions of the said

contract," and was "received and accepted by the said defendant as, and for, a compliance, on the part of the said plaintiff, with all the terms and conditions of the said contract, on the part of the said plaintiff to be observed and performed." It also contained the common counts. The defendant pleaded the general issue, with notice of a claim to recoup damages for non-performance by the plaintiff.

On the trial, the contract was put in evidence, and it appears thereby that the building was to be "completely finished and so delivered up to the [district], clean, and in good order for use, by the fifteenth day of July, A. D. 1870." All the work was to be "executed in the best and most workman-like manner, and agreeably to such directions as may be given from time to time by G. P. Randall, architect, or his assistant (who is employed by the [district] to superintend these works), and to his full and entire satisfaction, without reference thereon to any other person." The admission or allowance of any claim for alterations, or extras, was to be judged of, determined, and adjusted "solely by the superintendent above named," and the district was to pay, on the certificate of the architect, or superintendent, for the full and entire completion of the building, according to the plans and specifications, twenty-eight thousand seven hundred dollars, as follows: eighty-five per cent. from time to time, in monthly estimates, and the balance when the building should be fully completed.

The plaintiff testified that he constructed the building, and supposed it was entirely finished in August, 1870; the district appointed an overseer to investigate the work as it progressed; at first one Godfrey acted in that capacity; afterwards Joseph Davy, who was there constantly until the building was erected and enclosed; payments were received from time to time from the district, but no certificate was

ever given to draw it upon; the district began using the building in September, 1870, and it has been in use for a union school ever since; Mr. Davy found fault with the roof when it was mostly on, and the district served on plaintiff a notice that they did not accept the slating of the roof, because not in compliance with the contract. This notice bears date in December, 1869. The complaint was that the slates were too large, and of inferior quality. Plaintiff could not find smaller slate in market. Afterwards another notice was served, of which the following is a copy:

"JANUARY 2, 1871.

"A. R. WILDEY, Esq.:

"SIR:—The architect of our school building, G. P. Randall, of Chicago, Illinois, was here on the 28th of December, 1870, and made as thorough an inspection of the work as circumstances would allow, and has submitted his report, a copy of which is herewith enclosed. We, therefore, in accordance with his recommendation therein contained, and as provided in the contract, request you to go on and reconstruct, repair, and make such changes and additions to the work as can be done without injury to the building, and as indicated in his report, and, so far as practicable, put the work in such condition as the specifications and plans clearly indicate. Such work as can be done at once, is to be so done, and such as cannot be properly done in cold weather, to be done immediately after the weather shall have become sufficiently favorable for doing such work, and all under the direction of the school board, or such sub-superintendent as may be placed in charge of the work, in accordance with the terms of the contract for this work. Should you neglect or refuse to proceed with the work to completion, at or after the expiration of the time indicated in the contract, three days from the serving of this notice,

the school board will consider themselves at liberty to employ such help as may be necessary, and finish and complete the work themselves, and deduct the expense from the price and amount you were to receive on the full completion of such work.

        " (Signed,)         " J. ANDREWS, *Director.*"

The whole amount paid towards the building by the district was twenty-four thousand dollars.

The plaintiff then called as a witness, a builder of large experience, who testified that he examined the building with the plans and specifications before him, and compared the work with the specifications. The plaintiff then offered to prove by the witness the value of the work, item by item, and also that it corresponded with the specifications. This offer was objected to, and overruled, because it did not include the production of the certificate of the architect, which the court held to be the best evidence of the completion of the contract, and a condition precedent to the right to recover.

The plaintiff also offered to show extra work, and materials, done and furnished, on the request of the authorized officers of the district, to the value of one thousand dollars; which was objected to, and rejected, on the same ground above stated.

Also, that Randall, the architect, resided in Chicago, and was not present when the building was completed, nor until three months after the district took possession of the building; which was objected to, and excluded, as constituting no sufficient excuse for the failure to procure the architect's certificate.

Also, in addition to, and connection with, the facts previously stated, that the defendant took possession of the building in September, 1870, and, under the direction of the school board, exercises were held, which were called by

them a dedication of the building, when, by invitation of the board, public addresses were made, congratulating the people of the district, who were present in large numbers, on the completion of the building, etc.; which was also objected to, and excluded.

And the circuit judge charged the jury, that, for the purposes of this trial, and in order that the question might be passed upon by the supreme court, he had ruled in substance that, to entitle the plaintiff to recover, he must either show the certificate of Mr. Randall, the architect, or give some reasonable excuse for its non-production; and, no evidence of that kind having been offered, they must render a verdict in favor of the defendant.

We think these rulings of the circuit judge do not correctly interpret the contract. The architect was not made the sole inspector or judge of the work as it progressed, but, on the contrary, as he resided at a considerable distance, and a superintendent was expected to be, and was, in fact, chosen by the district, it is a reasonable inference, that the superintendent was expected to supervise the work as it proceeded, and to express his dissent with any portion not in compliance with the specifications. His powers were made, by the contract, as broad as those of the architect, and there is no consent in the contract that his decision should be subject to reversal or review by his nominal superior.

This being so, we think whatever passed under his inspection as the work progressed, and was, in good faith, approved by him, expressly or by implication, was not open to objection on the part of the defendant afterwards; and that, as to so much of the work, at least, the plaintiff had the same right to recover that he would have had, if the proper certificate had been furnished him. For it could never be held to be the intention of the parties, by any

such words as are contained in this contract, to give the superintendent power to re-examine his own conclusions after the builder had, as he supposed, completed the work, and then, to refuse a certificate, and preclude the builder from recovering payment, except upon the condition of making changes and modifications in particulars which had his approval, or being fully known to him then, were not objected to when the work was being done. An express agreement to give him this power would be so one-sided that it is not for a moment to be supposed the builder would enter into it. This contract contemplated the production of the certificate as the evidence of the contractor's right to his pay; but it might be waived, as it was in this case, to the extent that payments were made; and the plaintiff was entitled to it, as of right, as to any further work which he had done with the superintendent's approval, up to the eighty-five per cent. to be covered by the monthly estimates, and to the full amount, if the work was completed under his direction.

If there were intentional departures from the contract, either as to materials, or as to the mode of construction, with the approval or concurrence of the superintendent, a question might arise whether the contractor was entitled to greater or less compensation than if the contract had been strictly complied with; but this record does not raise that question. Variances that may have been treated by both parties as immaterial at the time, should not afterwards be held to be departures from the contract; and what was then regarded as substantial compliance with its terms, should be held a performance in law.

We are not informed what objections were made by the architect, but, except as they may have been confined to those particulars which had had the approval neither of himself nor of the superintendent, it is plain, we think,

that the contractor was under no obligation to give heed to them, and that his right to recover could not, in any respect, be limited by them. But if there were intentional departures from the contract, without the consent, express or implied, of the district officers, architect, or superintendent, but in disregard of their directions, then, although such departure would not constitute a bar to any recovery for other portions of the work which were duly approved, yet, the district would have had a right to insist on the proper changes to make it conform to the contract, and to recover any damages they might have sustained by the failure. And in a clear case, where the contractor had undertaken, in defiance of the superintendent, to force upon the district one thing, where they had bargained for another, —as, for instance, one kind of roof, where another was agreed for—unless there was a subsequent assent to accept it, express or implied, we do not think the district should be held liable to pay for the thing substituted at all. The district is not to be forced to take what it never wanted, or bargained for, on any pretense that it will answer their purpose as well, or that, even if it will not, it is still of some value, and should be paid for accordingly. The district must be allowed to judge for themselves what they want and will have.

Whether, however, the case of the roof of this building is one of this description, is a question which cannot be determined by us. The contract called for smaller slate than were used, and the plaintiff admits he was notified, while the slate was being put on, that he must not use it. He testifies, however, to a conversation with the superintendent, in which the latter expressed the opinion that the large slate would make an equally good job, and that the district board, if properly solicited, might assent to its use. And although the fact of the occupation of the building

by the district for their schools, would not of itself constitute an acceptance which should bar any claim on their part to insist upon a rectification of any faults, or the payment of any damages they may have suffered by the failure in strict compliance, yet, the fact of making payments afterwards without further objection, the manner of taking possession, and whether with or without objection to this variation from the contract, would have an important bearing on the question of fact, whether any rights of the district were, or were not, intentionally waived, or whether there was a purpose, on the part of the district officers, to accept the building as completed in substantial compliance with the contract. But merely taking possession of the building, at a time when the district had a right to have it completed ready for its use, and when, perhaps, it might be impossible, or exceedingly inconvenient, to accommodate their schools elsewhere, and the alternative might be the suspension of the schools altogether, might not be a very important circumstance in its bearing against the district on the question of waiver or acceptance.

From the views here expressed, it will be seen that the judgment must be reversed. As to the right of a party in general to recover upon the common counts, subject to a recoupment of damages, where he has not complied strictly with his contract, we adhere to the views expressed in *Allen v. McKibbin, 5 Mich., 449,* and do not deem it necessary to repeat them here.

The judgment is reversed, with costs, and a new trial granted.

The other Justices concurred.