FINNEGAN *v.* WORDEN-ALLEN CO.

1. CONTRACTS—SEVERABLE CONTRACTS—CONSTRUCTION.

Where plaintiff's subcontract was for construction of the abutments of twelve bridges at a stated price per yard, and a lump sum for the concrete floors, it cannot be contended that the contract was severable as to the abutments of each bridge, because the county engineer measured and reported the concrete work in the abutments of each bridge as it was completed, and payments on such statements were made from time to time to defendant, the general contractor.

2. SAME—DEFAULT—BREACH OF CONTRACT.

Continued and repeated defaults in payment according to the provisions of a contract justify a contractor in abandoning the work before completion if the breach exists at the time of abandonment, particularly when necessitated by lack of funds to continue owing to such default in payment.[1]

3. SAME—DEFAULT—WAIVER.

Where default in payment was never rectified by defendant or condoned by plaintiff, the latter did not waive his right to abandon the contract by proceeding with its performance until compelled to quit for lack of funds.

4. SAME—PAYMENT IN MATERIAL—COMPLIANCE WITH CONTRACT.

Where defendant caused gravel to be delivered at bridges

---

[1]See note in 30 L. R. A. 33.

not started by plaintiff, which he did not see, accept, or use, it cannot be urged as a compliance with the terms of the contract to pay 75 per cent. in cash on completion of the work, since plaintiff was entitled to be paid in money and not gravel.

5. SAME—DAMAGES—CONDITIONAL JUDGMENT.
 Where the verdict for plaintiff failed to deduct a certain sum for gravel paid for by defendant and used by plaintiff, the judgment will be affirmed conditional upon plaintiff's remitting such amount with proportionate interest.

Error to Gogebic; Cooper, J. Submitted January 11, 1918. (Docket No. 41.) Decided June 3, 1918.

Assumpsit by John F. Finnegan against the Worden-Allen Company for a balance due on a bridge contract. Judgment for plaintiff. Defendant brings error. Affirmed, conditionally.

*Charles M. Humphrey* (*Bottum, Bottum, Hudnall & Lecher,* of counsel), for appellant.

*James A. O'Neill,* for appellee.

STEERE, J. Plaintiff recovered a verdict and judgment against defendant in the circuit court of Gogebic county in the sum of $1,702.28 for concrete work done by him under a subcontract in connection with the construction of certain steel and concrete highway bridges in said county for which defendant had secured a contract. Plaintiff declared upon the common counts in assumpsit claiming damages not to exceed $3,000, furnishing and filing a bill of particulars on demand showing a balance due him from defendant on construction of abutments and floors of specified bridges amounting to $2,835.97. Defendant pleaded the general issue with a detailed notice of special defense that the work done and material furnished by plaintiff, if done and furnished as claimed, were pursuant to a special subcontract in writing between the parties for construction by plaintiff of the abutments

and concrete work on floors of certain bridges provided for in defendant's contract with Gogebic county, charging that plaintiff failed to fully perform said subcontract on his part and breached the same, by reason whereof defendant suffered damages to the sum of $3,000 which it would claim and prove at the trial by way of recoupment.

It was shown upon the trial that defendant, the Worden-Allen Company, of Milwaukee, Wisconsin, entered into a certain contract in writing with the county road commissioners of Gogebic county, on May 1, 1912, whereby the former agreed to furnish the material and construct ready for travel 12 highway bridges across streams in said county according to furnished plans and specifications, at the stated price of "$10,840 for superstructures complete. $9.40 per yard for all concrete in abutments. (Estimated yardage 625 yards.) —$5,875.00," payments to be made on the first of each month at 75% of total work then done, the balance "upon completion and acceptance of work."

On the day this contract was secured by defendant plaintiff had a conversation with its representative relative to taking over the concrete work, resulting in his signing the following proposal which defendant later accepted from Milwaukee by letter:

"BESSEMER, MICH., May 1 1912.
"WORDEN-ALLEN CO.,
 "Milw., Wis.

"*Gents:* We agree to do all abutment work for $9.40 per yard, and further to place all concrete on floors of the 12 bridges as specified (578' x 16') (you to place forms) for total sum of $1,300.00 doing work per specifications, requirements, etc., guaranteeing same, etc., as per your contract, payments, etc., same.

"If 'Hy-rib' is used additional to be paid us a/c plastering.

"J. F. FINNEGAN.
"P. O. Verona, Mich., Gogebic Co.

"No bond to be required in view of consideration here allowed."

There was some delay in accepting the proposal because of absence from Milwaukee of defendant's authorized representative, and correspondence as to certain details, but on June 13, 1912, defendant wrote plaintiff indicating final acceptance and wishing him success with the work, saying in part: "In relation to the concrete floor work, we will expect you to do the floor work along with the abutment work, as per our proposition to you," which apparently had reference to the provision on that subject in plaintiff's proposal of May 1st which was prepared by defendant's agent when in Gogebic county, who left a copy with plaintiff and took the signed original with him to Milwaukee for consideration and acceptance by defendant, if found satisfactory.

Plaintiff worked upon this contract during the season of 1912 and by September 7th had completed the concrete abutments of five bridges, when he notified defendant's representative who was in charge of the structural work that he was ready to do the concrete floor work on these bridges, but was informed it could not be done then because they did not have the hy-rib material on hand yet, and would not have it for a month or six weeks. He was then directed to proceed with his equipment to the site of what was called the Camp Francis bridge and put in the abutments there, which was some distance away in another part of the county with no direct line of travel opened to it from where he was, necessitating a trip and transfer of his help and equipment by a circuitous route of near 100 miles, by rail and road. He thereupon moved with his outfit to that site, arriving on September 11th, and proceeded to construct the abutments for the Camp Francis bridge, finishing the same on November 1st. While engaged in this work he received, on October 7th, a letter from defendant dated at Milwaukee Sep-

tember 28th and addressed to Verona, Michigan, stating that the hy-rib material had reached Marenisco and it was expected defendant's foreman would proceed to place it, urging plaintiff to return and do the concrete floor work of those bridges immediately, followed by other communications to the same effect, also stating that in case he did not attend to it at once defendant would be compelled to do the work and charge the extra cost to him, which would be expensive, "because of the demurrage that it will cost us elsewhere on account of delaying our work holding our men in Gogebic county." Plaintiff was then busy trying to finish the abutments of the Camp Francis bridge before the weather became too cold for concrete and did not go. He testified that if he could get cars to move his equipment in a reasonable time it would have taken him six or eight days to get his outfit moved from where it was back to the bridges where defendant wanted the floors placed and by the time he had finished the camp Francis bridge the season was so far advanced and cold that with his experience of ten years at concrete work he considered it a certainty that this floor concrete work if done by him after he could get there would be destroyed by freezing.

For satisfactory reasons not material here, the time of completing defendant's contract had been then extended through another season—and the next year extended again—by the county board of highway commissioners; but, at the request and on the insistence of the county engineer who claimed that the unfinished highway crossing over three of those bridges could be used for a winter road, defendant laid the floors of three of the bridges that fall charging all expenses to plaintiff, which exceeded his contract price for the same by $308.27.

Plaintiff was paid monthly as the work progressed

75% of the county engineer's estimates of the work then done on his subcontract, according to the terms of payment provided in defendant's contract with the county, and depended on this to pay for labor, material and other expenses in that connection. On November 4, 1912, and again on December 3d he wrote defendant urgently for money to pay his labor and bills. On December 3, 1912, defendant sent him a payment of 75% on work done by him up to that time according to engineer's estimates, less the $308.27 claimed as extra cost of the floor work in question.

Work upon plaintiff's contract was necessarily suspended during the winter, but preparatory to its resumption and with an apparent understanding of all parties concerned some gravel was hauled by the county to three of the bridge sites, at the instance of the county engineer, who testified:

"I suggested to them that it would be a good plan to have the gravel hauled on the snow during the winter while the snow was on the ground. I saw Mr. Finnegan with reference to the matter of hauling the gravel, and if I remember rightly he said it was all right because we hauled the gravel, * * * the whole charge for hauling and placing the gravel was $420.01. * * * This gravel was charged on the books of the county road commission to Worden-Allen company along about March 20, 1913."

Plaintiff resumed work upon his contract in the spring of 1913 and continued, as he claimed, until he could go no further for the lack of funds owing to defendant's refusal to pay what was due him. He built the abutments of two bridges, hauling the gravel himself for one of them and using the gravel he found at the other which, as he testified, the county engineer had told him he was going to put there and for which a bill of $151.14 was rendered to plaintiff by the county.

Although he continued work until some time in

August, 1913, plaintiff insistently and repeatedly protested against the deduction of $308.27 from the 75% due him for work done, complained of the embarrassment resulting to him from failure to promptly pay him what was due each month before the 15th, at which time his men had to be paid, notified defendant of his pressing need for funds to carry on the work and stated that if they would pay him what was withheld or furnish necessary material of that value he could and would complete the contract, but otherwise would quit. On July 8th he wrote:

"Your check for $249.26 came to hand for floor on Camp Francis Bridge. You are shy on this check $26.00, also $308.27 from last year. There will be no more work done by me on the bridges until this money is paid."

Plaintiff did not work on his contract after August 13th, of which he testified, in part:

"I discontinued the work in 1913 because I couldn't go ahead. I didn't have any money or any material. If I had received this $308.27 I would have been able to proceed and finish the work. I so notified the defendant. I notified them that I would be willing to accept $308 worth of cement from them. If I had received the cement I could have gone ahead and finished the work."

Mr. Winkler, the county engineer, who testified that the work done by plaintiff was found satisfactory and acceptable, wrote defendant two letters in relation to this matter from the county's standpoint, saying in one of them, amongst other things:

"It does seem like a good idea if there is a difference between you and Mr. Finnegan that same should be adjusted in such a way that this county will not be the loser thereby in valuable time. Furthermore it don't seem to be such an insurmountable difficulty for you to furnish your subcontractor with funds to carry on his work, especially when the amount is due him."

On the trial plaintiff's claim was for the reasonable value of work done and material furnished, less payments made, on the theory that defendant had first breached the contract and prevented performance on his part by wrongfully withholding payments due him with which if made he would have been able to perform.

During the progress of the trial defendant's claim and position was that plaintiff first breached the contract in refusing to lay the bridge floors in the fall of 1912 as directed, which justified defendant in doing that work and charging the cost to him, it not being guilty of any breach of contract on its part.

At close of the testimony defendant's counsel moved the court to instruct the jury to render a verdict in plaintiff's favor for the sum of $246.29 with interest, which was refused and the case submitted to the jury, with careful instructions, on the questions of whether plaintiff was justified in abandoning his work by reason of defendant's breach of the contract, whether he waived such breach by continuing the work thereafter, the reasonable value of what he had done and furnished up to the time he quit, defendant's claim of recoupment and the state of their accounts as the jury might find the facts to be, followed by a verdict for plaintiff as before stated.

Defendant thereafter moved for a new trial on various grounds amongst which are the following:

"*Secondly.* The court erred in refusing and overruling the motion of the defendant, upon receiving the verdict of the jury and before the entry of judgment, to enter judgment for the plaintiff for the sum of $246.29 with interest. * * *

"*Ninthly.* The court should have determined, as a matter of law, whether or not the defendant was justified in building three floors on the bridges in the fall of 1912 and to charge the cost thereof, amounting to $308.27, to the plaintiff, and if the court found that the

defendant was not so justified, then it was the duty of the court to have entered judgment for the plaintiff for the sum of $554.56, with interest at the rate of 5% per annum from November 20, 1914."

In overruling this motion the court said in part:

"It appears that a large part of the charge of the court was devoted to the submissions of questions that are not now to be considered, in view of what is admitted by the defendant. The remainder of the charge has been considered and appears to me to be proper."

In this court it is contended there was no issue for submission to the jury because "all the evidence as to the terms of the contract and acts of the parties thereunder was undisputed," only questions of law for the court being involved, and in that connection it is said in defendant's brief:

"The only question is whether the defendant could legally require plaintiff to place those floors at that particular time under the contract. We concede that it could not under the terms of the contract. We further concede that the defendant improperly withheld $308.27 from the plaintiff on December 13, 1912, but such withholding was done under the mistaken idea that the contract required the plaintiff to build the floors in October, 1912. Notwithstanding these concessions, we contend that the judgment as entered was erroneous and should be reduced in amount for the reasons hereinafter stated."

After a discussion of the questions of law raised as applied to the conceded and claimed undisputed facts, counsel further say:

"Consequently his abandonment of the contract in August, 1913, was unwarranted, and he should be held liable for all damages occasioned the defendant by such breach. According to the undisputed evidence, such damage amounted to the sum of $1,171.99 less the sum of $308.27 which we concede was improperly charged, making the damages $863.72. Deducting this sum from $1,418.28, the balance due Finnegan on the work he completed, leaves the actual balance now due $554.56.

We concede that that is the proper judgment which should be entered and that the trial court was in error in entering judgment for a greater amount. * * * The judgment should be reversed and the case remanded with directions to enter judgment in favor of the plaintiff and against the defendant for the sum of $554.56, with interest thereon from November 20, 1914, at the rate of 5% per annum."

The three reasons urged under the situation thus conceded and presented are:

"That the contract was severable as to the abutments for each bridge and the failure to pay any installment due under the contract would not authorize the abandonment of the contract in the absence of any evidence showing that the defendant, by reason of such failure to pay, intended to abandon the contract on its part.

"Assuming that such failure to pay was such a breach as would authorize the plaintiff to abandon the contract, the right to so abandon the contract was waived by the plaintiff subsequently proceeding under the contract and accepting payments thereunder.

"The right to abandon the contract must be determined as of the date when the same was abandoned, and at that time the uncontradicted evidence shows that the defendant had advanced to plaintiff materials of greater value than the amount of the payment withheld."

The contention that the contract was severable as to the abutments of each bridge is based upon the claimed practical construction put upon it by the road commissioners, as evidenced by the testimony of the county engineer that he measured up the concrete work in the abutments of the bridge "as it was completed," or "after the abutment work was completed," figured up 75% of its value at the contract price and made a report of it to the road commissioners, who on such statement made payments "from time to time" to defendant. We find nothing in this practice of the engineer in making and reporting his estimates to affect

the rights of plaintiff or change the provisions of the written contracts involved. Plaintiff's subcontract was for construction of the abutments at a price per yard, and $1,300 as a total sum for the concrete floors. Defendant's contract provided a lump sum for superstructures of all the bridges, including the floors, and $9.40 for all concrete work in building abutments, "payments for both superstructures and substructures to be made on first of each month at 75% of the total work done, balance upon completion and acceptance of work." In this there was no ambiguity. No question of construction is involved. The promise as to time and terms of payments had no more relation to separate bridges than it had to separate abutments or yards of concrete. It related to the contract in its entirety and as a promise was entire and indivisible, except as directed in time of payments to proportions of the whole.

"The practical construction put on a contract by the parties cannot control the express unambiguous provisions of the instrument itself." 13 C. J. p. 548, and cases cited.

The claim that plaintiff waived his right to abandon the contract by proceeding with its performance after defendant admitted breach in failing to pay the amount withheld at the close of the 1912 season, is not applicable to the undisputed facts in this case. The refusal to pay the amount then and thereafter due, because of a "mistaken idea" as to its rights under the contract, was a continuous breach never rectified by defendant nor condoned by plaintiff. He continued to protest and demand payment, urging his need for it in order to continue the work, until he finally quit for lack of funds as the result of such continuing breach. Continued and repeated defaults in payment according to the provisions of a contract justify a contractor in abandoning the work before

completion if the breach exists at the time of abandonment, particularly when necessitated by lack of funds to continue owing to such default in payment. *Grand Rapids, etc., R. Co.* v. *Van Dusen*, 29 Mich. 431.

The contention that defendant had advanced plaintiff at the time he quit material of greater value than the amount withheld is directed to the contention that gravel hauled by the county in the winter and charged by it to defendant in March, 1913, was for abutment work to be done by plaintiff and therefore a proper charge against him.   Plaintiff testified that he was told by the engineer he would put gravel at No. 6 bridge, where the latter was going to work, and when he went there he found some gravel which he used, amounting to about 60 yards; that the county engineer charged it to him and rendered him a bill of $151.14 for its value, but for the abutments of the other bridge (No. 9) built by him in 1913 he got the gravel himself, hauling it about half a mile, and aside from bridge No. 6 he hauled and furnished all the gravel himself. In overruling defendant's motion for a new trial the court refers to this claim as an "afterthought."   In correspondence between these parties contentions and claims of each as to plaintiff's right to quit were discussed and on November 10, 1913, when plaintiff was urging payment of his claim, after he had quit and long after this gravel is claimed to have been furnished him, defendant wrote, in reply to his demand for what he claimed yet due him, as follows:

. "We have yours of the 24th inclosing statement for building abutments in the year 1912.   We have your bond guaranteeing completion of the work in accordance with our contract with Gogebic county and we have letters on file regarding the floors on three jobs completed last fall, that you advised you could not possibly put these floors and accordingly we advised you we would go ahead with the work charging the difference in cost between our expense and our contract price to you.

"The expense of putting on these floors amounted to $788.56 and at the price you agreed upon this would have come to $480.29, leaving a loss on our part of $308.27, which amount we charged to you.

"This has been explained to you before and to the commissioners, and we do not see why you should bring up the matter again at this time."

In accepting plaintiff's proposal defendant advised him "we will expect you to do the floor work along with the abutment work." When he desired to do just that, defendant, not having yet provided the structural material which was necessary for that work, gave directions necessitating removal of his outfit to a distant part of the county to continue with his contract and then ordered him back late in the fall before that work was done to do the floor work he had previously proposed to do, "along with the abutment work," when there. On his protesting, with full explanation of his reasons for declining, it insisted with threats and took the position indicated in the above letter which was persistently maintained in violation of their contract until he quit, and until this case was tried.

If it was a question of law whether plaintiff waived his right to avail himself of this breach at the time he quit, the jury rightly decided it, and awarded him as the reasonable value of the work done up to the time he quit the contract price with interest at five per cent., less the amount he had already been paid according to the undisputed condition of their account—except that the item of $151.14 for gravel used by plaintiff at bridge No. 6 was apparently overlooked. He admits he did not pay for this himself and that it is a proper charge against him, if subsequently paid for by defendant, as is shown to have been the case. Under the undisputed evidence that item cannot be regarded as an afterthought, although urging the gravel he did not use or see as a charge against him sufficient in amount to relieve defendant of its breach

might have been. The gravel he used and defendant later paid for does not, however, affect the rights of the parties at the time plaintiff quit, for defendant yet arbitrarily withheld money due him under his contract which he needed, not to buy gravel with but to pay his help, get cement, etc., in order to continue operations. He was entitled to be paid in money, not gravel. If gravel charged to defendant had been delivered by the county at other bridges, he did not see, accept, or use it. Defendant was not obliged to furnish it to him nor he to accept it.

Provided within 30 days plaintiff remits from this judgment $151.14, with proportionate interest, the same will stand affirmed, with costs; otherwise it must be reversed and retried.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.