W. J. HOWARD & SONS, INC., *v.* MEYER.

1. CONTRACTS—REMODELING OF FARMHOUSE—SUPERVISION—INSUR-
ANCE.

Items for supervision by officer of plaintiff corporation, work-
men's compensation, unemployment, and other insurance for
employees *held,* not improper charges for labor under cost-plus
contract for remodeling farmhouse for defendant, that con-
tained no specifications or maximum amount for completing
the project and no restrictions as to who should perform the
supervisory services.

2. SAME—PROFIT AND OVERHEAD CHARGE—SUBCONTRACTED ITEMS—
AMBIGUITY.

Profit and overhead charge by general contractor on items which
were subcontracted out were properly included under cost-plus
contract for remodeling defendant's farmhouse that was found
by the circuit judge not to be free from ambiguity.

3. SAME—CONSTRUCTION—INTENT.

A contract is to be read in the light of the circumstances attend-
ing its execution and construed so as to effectuate the intent
of the parties when it was made.

4. SAME—CONSTRUCTION.

A promise must be interpreted in the sense in which the promisee
knew or had reason to know that the promisor understood it.

5. SAME—AMBIGUITY—PRACTICAL CONSTRUCTION BY PARTIES.

A practical interpretation given an ambiguity in a contract by
the parties thereto is entitled to consideration by the court.

6. SAME—PRACTICAL CONSTRUCTION—SELF-SERVING INTERPRETATION
—ACQUIESCENCE.

The practical construction given by the parties to an ambiguity
in a contract is not limited to the self-serving interpretation

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  9 Am Jur, Building and Construction Contracts § 20.
Construction of cost-plus contracts.  27 ALR 48.
[3, 4]  12 Am Jur, Contracts § 226 *et seq.*
[5]  12 Am Jur, Contracts § 249.
[8, 9]  9 Am Jur, Building and Construction Contracts § 36.
Conclusiveness of certificate or decision of architect or engineer
under building construction contract.  110 ALR 137.

by one party thereto but requires the acquiescence by the other party.

7. SAME—REMODELING OF FARMHOUSE—PRACTICAL CONSTRUCTION—EVIDENCE.

It was not error for trial judge in nonjury action by building contractor to admit evidence tending to show the practical construction that the parties had placed on provision of cost-plus contract for remodeling of defendant's farmhouse relative to architect's approval of contractor's monthly statements for payment by owner.

8. SAME—APPROVAL BY ARCHITECT—FRAUD.

The decision of an architect in approving or disapproving the work as a performance of a construction contract, or in passing on questions relating thereto, is, in the absence of fraud, bad faith, or mistake, conclusive and binding on the parties, where the contract, either in express terms provides that it shall be final and conclusive, or in plain language shows that it was the intention of the parties that the person to whom the question is submitted should be the final arbiter thereof.

9. SAME—REMODELING OF FARMHOUSE—APPROVAL BY ARCHITECT.

Finding of trial court that defendant owner of farmhouse was bound by architect's action in approving remodeling contractor's statements for payment and that contractor was entitled to judgment for amount claimed *held*, not error under record presented and renders it unnecessary to discuss defendant's claim of set-off and recoupment.

Appeal from Oakland; Dondero (Stanton G.), J. Submitted June 5, 1962. (Docket No. 5, Calendar No. 49,183.) Decided September 7, 1962. Rehearing denied November 5, 1962.

Assumpsit by W. J. Howard & Sons, Inc., a Michigan corporation, against Adolph H. Meyer for sums due on building contract. Set-off and recoupment by defendant claiming overpayment. Judgment for plaintiff. Defendant appeals. Affirmed.

*Forsythe & Beasley* (*William R. Beasley,* of counsel), for plaintiff.

*Fox, Fox & Halbrook,* for defendant.

Carr, C. J. Defendant in this case, being the owner of a farmhouse in Novi township, Oakland county, Michigan, desired to remodel it. To that end he employed an architect, Norman Simmons, to prepare plans therefor. Because of the nature of the project, and the unknown factors that might develop in the course of the operation, no specifications were prepared. In accordance with the advice of the architect, plaintiff corporation was selected as the contractor. Plaintiff had previously done work for Simmons and also for a company owned by defendant. In the absence of specifications it was determined that the work should be done on a cost basis.

A written contract was prepared on a standard form of agreement issued by the American Institute of Architects for use when a stipulated sum forms the basis of payment. The record indicates that plaintiff filled out the form by typing in certain provisions in accordance with the agreement reached by the parties. The following provisions of the instrument as signed by plaintiff and defendant are material in the instant controversy:

"*Article 3. The contract sum*—The owner shall pay the contractor for the performance of the contract, subject to additions and deductions provided therein, in current funds as follows: Labor and material costs, including supervision, plus 15% overhead and profit. Monthly requests for payment will included recapitulation of labor costs and duplicate material invoices. All payments subject to approval of Mr. Norman Simmons.

"NOTE: Owner and designer to be furnished schedule of prevailing labor rates.   *   *   *

"*Article 4. Progress payments*—The owner shall make payments on account of the contracts as provided therein, as follows:

"On or about the 5th day of each month 100% of the value, based on the contract prices of labor and materials incorporated in the work and of materials

suitably stored at the site thereof up to the 30th day of that month, as estimated by the architect, less the aggregate of previous payments; and upon substantial completion of the entire work, a sum sufficient to increase the total payments to .... percent of the contract price .... ......

"*Article 5.    Acceptance and final payment*—Final payment shall be due 15 days after substantial completion of the work provided the work be then fully completed and the contract fully performed.

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the architect shall promptly make such inspection, and when he finds the work acceptable under the contract and the contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the contractor, and noted in said final certificate, is due and payable.

"Before issuance of final certificate the contractor shall submit evidence satisfactory to the architect that all payrolls, material bills, and other indebtedness connected with the work have been paid.

"If after the work has been substantially completed, full completion thereof is materially delayed through no fault of the contractor, and the architect so certifies, the owner shall, upon certificate of the architect, and without terminating the contract, make payment of the balance due for that portion of the work fully completed and accepted.   Such payment shall be made under the terms and conditions governing final payment, except that it shall not constitute a waiver of claims."

In accordance with its usual method of procedure plaintiff engaged subcontractors for certain portions of the work and paid them on the bases of statements rendered thereby.    Statements covering charges made by plaintiff against defendant were

submitted from time to time to Architect Simmons. The first 6 requests for payment were approved by Simmons, the first 5 being paid in full by defendant, and the sixth request paid in part. The record indicates that the reason for such partial payment was due to a cash shortage at the time on the part of defendant. Three subsequent statements were submitted but because the aggregate cost of the project exceeded the estimated expense of remodeling, approval was delayed, but, after certain adjustments, Simmons ultimately certified to their correctness. Defendant, however, declined to make payment, and the instant suit has resulted from such refusal.

It is not disputed that the statements as prepared and served by plaintiff from time to time indicated specifically the expenditures that it had made and for which it sought payment from defendant. It is not claimed on behalf of defendant that he, or his architect, was in any way misled with reference to plaintiff's claim that it was entitled to be reimbursed and to receive payment of compensation for the various items set forth in each statement rendered. In other words, there is no claim of concealment on plaintiff's part, and apparently the controversy resulting in the litigation was due to the cost of the project over and above the estimated expense thereof. As before noted, no specifications were prepared and the basis for arriving at the estimated cost does not appear in the record.

Plaintiff in its declaration asserted the right to recover pursuant to the contract on the basis of the requests for payment, or invoices, periodically served on the architect and on defendant, on which the latter refused payment. As noted, Simmons ultimately approved the last 3 statements, and he testified in substance that the hesitancy in giving his approval was due to the overall costs of the project. He further testified that he had no specific objec-

tions to any of the items listed in plaintiff's invoices other than on 1 or 2 minor matters which were adjusted to his satisfaction. Defendant by answer to the declaration denied that the statements rendered from time to time by plaintiff were correct or in accordance with the contract as drawn, and alleged that overpayments in the aggregate sum of $11,018.69 had been made, the allowance of which sum in his favor he asserted in a plea of set-off and recoupment. Plaintiff claimed the right to recover the total amount of $7,830.40.

The case was tried before the circuit judge without a jury. After listening to the proofs and the arguments of counsel the judge came to the conclusion that under the contract as written there was "some area of ambiguity as to the items to be included in costs." He further concluded that by their conduct the parties had given a practical interpretation to the language of the agreement as prepared in the manner above indicated, that Architect Simmons was granted authority by defendant to pass on the propriety of the statements submitted by plaintiff, that Simmons acted on behalf of defendant throughout the entire transaction, and that his acts in approving the statements for payment were binding on defendant. Accordingly, judgment was entered for plaintiff in the amount claimed, with interest, and defendant's plea of set-off and recoupment was rejected. From the judgment entered, defendant has appealed.

On behalf of appellant it is insisted that the contract as written was not ambiguous or of doubtful meaning, and that, in consequence, testimony as to the practical construction placed thereon by the parties was not competent. As noted, the trial judge thought otherwise, and on behalf of plaintiff it is contended that the form of contract used was filled out in such manner as to create doubt as to the

actual intention of the parties at the time. It is, of course, a settled principle of contract law that such an instrument must be interpreted in the light of the circumstances existing at the time of its execution. Obviously the subject matter of the agreement between the parties to the instant case was somewhat unusual. The architect deemed it impossible to prepare specifications for the doing of the work, as would naturally be done in an ordinary case involving construction. Apparently the parties could not foresee exactly what might occur in the course of the remodeling or precisely what might be necessary to the carrying out of the project pursuant to the wishes of defendant and his architect.

Among the disputed items charged by plaintiff against defendant in the various statements served, including those that were paid without question, were charges for supervision by George M. Howard, an officer of plaintiff corporation. It will be noted that the contract as written included "supervision" as a proper labor charge without specifying the nature or character thereof, or by whom to be rendered. Plaintiff also charged for expenditures for insurance. The testimony taken in the case indicates that the insurance in question was for the benefit of employees and included "workmen's compensation, unemployment, social security, health and welfare, pension, vacation, and paid holidays." It is probably true that a contractor submitting an offer, or bid, for the doing of a particular operation would take such an item into account in estimating his expenses. May it be said to be an improper labor charge? Apparently the parties to this case thought not when the first statements were paid as rendered.

Question is also raised with reference to payments to subcontractors, which payments included certain items of profit and overhead. It is claimed that in

the carrying on of work for which plaintiff contracts it habitually employs the services of subcontractors for the reason that it does not have the facilities for the performance of all types of labor that may be required. Such procedure is not unusual. No claim is made that defendant and his architect were not aware thereof. Again the question arises, what did the parties intend with reference to items of this nature at the time they made their agreement, in view of the project involved? Likewise with other items included in the statements furnished by plaintiff to defendant and paid by the latter after approval of the architect, the query is involved as to what the parties had in mind with reference to expenses connected with labor that might be found necessary. Reading the contract in the light of the condition existing, and the uncertainties with reference to certain features of the proposed remodeling, we conclude that the circuit judge was right in holding that the written contract was not free from ambiguity or doubt as to the actual intention of the parties.

Appellant relies on prior decisions of this Court involving written contracts so drawn that no possible claim of uncertainty or ambiguity as to the meaning of the language used could arise. Among the cases cited are: *Finnegan* v. *Worden-Allen Co.,* 201 Mich 445; *Township of Zilwaukee* v. *Saginaw-Bay City R. Co.,* 213 Mich 61; and *L. & S. Bearing Company* v. *Morton Bearing Company,* 355 Mich 219. These decisions and others of like nature may not be regarded as controlling in the instant controversy.

In *Biltmore Land Co.* v. *Estate of Munro,* 271 Mich 125, 129, this Court quoted from prior decisions certain principles of construction of contracts, as follows:

" 'The contract is to be read in the light of the circumstances attending its execution. It should be construed so as to effectuate the intent of the parties when it was made.' *Whitman* v. *Whitman,* 207 Mich 337, 348.

" 'To ascertain the intent of the parties a contract should be construed in the light of the circumstances existing at the time it was made.' *Kellogg* v. *Kellogg Toasted Corn Flake Co.,* 212 Mich 95, 114.

" 'The promise must be interpreted in the sense in which the promisee knew or had reason to know that the promissor understood it.' *Tallcot* v. *Arnold,* 61 NY 616, quoted with approval in *Ardis* v. *Grand Rapids & I. R. Co.,* 200 Mich 400, 414."

In *W. O. Barnes Company, Inc.,* v. *Folsinski,* 337 Mich 370, 382, it was said:

"In an instance where parties to a contract have by their conduct given a practical interpretation to its provisions, such interpretation is entitled to consideration by the court. *City of Big Rapids* v. *Michigan Consolidated Gas Company,* 324 Mich 358, 367 (79 PUR NS 301); *City of Mt. Pleasant* v. *Michigan Consolidated Gas Company,* 325 Mich 501, 511 (81 PUR NS 589)."

The following comment was made in *Davis* v. *Kramer Bros. Freight Lines, Inc.,* 361 Mich 371, 375, 376, with reference to the question at issue here:

"There is no doubt that evidence of practical interpretation by the parties is admissible as an aid in the determination of the meaning to be given legal effect. But the key word in this sentence is in the plural, 'parties.' A one-sided, self-serving interpretation by one party is of no help in interpretation. Acquiescence by the other party is required to establish a practical construction by the parties and this is precisely the thrust of appellants' claim of error."

We conclude that the trial judge was not in error in admitting evidence tending to show the practical construction that the parties had placed on their contract, which construction defendant now seeks to reject. It is significant that the first statements presented to him for payment contained items that he now asserts were improperly included. Presumably he did not think so at the time of payment. Obviously he and his agent, the architect, knew the interpretation that plaintiff was placing on the contract as written and they acquiesced therein, thus indicating their approval. It may be assumed that plaintiff considered that its interpretation of the contract was not questioned, and that it might continue with the project accordingly.

Under the agreement as drawn Architect Simmons was authorized to approve for payment the statements rendered by plaintiff. This he did. The provision of the contract, above quoted, with reference to final payment thereunder, clearly indicated his authority in the premises. Significant also is the further provision requiring evidence to be submitted to the architect with reference to payment of all indebtedness connected with the work. In *Strom-Johnson Construction Co.* v. *Riverview Furniture Store,* 227 Mich 55, the building contract involved provided that payment on account should be made at reasonable intervals as the work progressed, upon certificates of the architect. With reference to the effect and conclusiveness of the architect's certificate, the Court quoted (p 66) with approval from 9 CJ, Building and Construction Contracts, § 115, p 772 as follows:

" 'In general. The decision, estimate, or certificate of an architect, engineer, or superintendent, in approving or disapproving the work as a performance of a contract, or in passing on questions relating thereto, is, in the absence of fraud, bad faith, or

mistake, conclusive and binding on the parties, where the contract, either in express terms provides that it shall be final and conclusive, or in plain language shows that it was the intention of the parties that the person to whom the question is submitted should be the final arbiter thereof.' "

Attention was directed to the fact that in support of the language quoted the following Michigan cases were cited: *Wildey* v. *School District,* 25 Mich 419; *Kelly* v. *Muskegon Public Schools,* 110 Mich 529; and *Young* v. *Stein,* 152 Mich 310 (17 LRA NS 231, 125 Am St Rep 412). The contract in the *Strom-Johnson Case* contained a provision for arbitration of the architect's decisions. It was held that subject to such provision he was the final arbiter as to all claims of the owner or contractor.

The trial court was not in error in holding that defendant was bound by the action of Architect Simmons in approving the statements rendered by plaintiff and that, in consequence, the latter was entitled to judgment for the amount claimed by it. The conclusions stated render it unnecessary to discuss defendant's claim of set-off and recoupment based on the theory that the contract was not ambiguous, that practical interpretation by the parties should be disregarded, and that the language of the instrument should be given the construction contended for by defendant. The judgment entered in trial court is affirmed.

DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.