464 P.2d 612

**SAM LEVITZ FURNITURE COMPANY,**
Inc., an Arizona corporation, Appellant,

v.

**SAFEWAY STORES, INC., a Maryland corporation, and Arizona Land Title & Trust Company, as Escrow, Appellees.**

**No. 9830–PR.**

Supreme Court of Arizona.

In Banc.

Jan. 28, 1970.

Rehearing Denied Feb. 10, 1970.

S. Leonard Scheff, Tucson, for appellant.

Snell & Wilmer, by Arthur P. Greenfield and Maynard P. Goudy, Phoenix, for appellees.

LOCKWOOD, Chief Justice:

This case is before us on a petition to review a decision of the Court of Appeals reversing a judgment of the Superior Court. The decision of the Court of Appeals, reported at 10 Ariz.App. 225, 457 P.2d 938, is vacated.

After nearly two years of negotiations plaintiff-appellant-seller, hereinafter referred to as Levitz, entered into a written agreement to sell, for $205,000, a four-acre tract in Tucson, to defendant-appellee-buyer, hereinafter referred to as Safeway. The contract contained the following provision:

"Seller has been informed that Buyer's agreement to purchase the property * * is conditional upon Buyer's purchase, upon terms satisfactory to Buyer, of adjacent property described as follows * * *."

The description which followed, included a parcel of adjacent land which we will refer to as the St. Pierre property.

Earnest money and documents were placed in escrow for both properties. Shortly before closing, Safeway's agent looked over the St. Pierre property and found Lucy Teach living on it. After some conversation with her, he discovered that she claimed a life estate in the property in accordance with what she described as a "recorded" will, and had two tenants renting part of the property from her.

The title company pronounced the title unmerchantable and refused to insure it unless Lucy Teach either joined in the contract to sell, or executed a quitclaim deed to the property. The trial court found that she was a necessary signatory seller and that it would have required a lawsuit to eject her. This impasse resulted from two things: (1) The rule of law that a buyer of real property takes with notice of rights claimed by any one in possession, and (2) the widespread practice, by title companies, of excepting from their insurance coverage "rights of parties in possession."

Safeway showed its good faith by trying to get an: "extended" title policy—i. e. one which would insure them against rights claimed by parties in possession—but the title company refused to issue one. After several attempts to compromise, rather than buy a lawsuit Safeway repudiated both sales.

Levitz brought the present action against Safeway for specific performance, alleging that Safeway had entered into a binding contract to buy the St. Pierre property, thereby fulfilling the condition precedent to the Levitz contract. Safeway defended on the ground that "purchase", as used in the Levitz contract meant to "acquire title" not merely to "enter into a contract to acquire title."

The trial court entered summary judgment for Safeway, and Levitz appealed. The Court of Appeals (Judge Hathaway dissenting) on September 8, 1967, reversed, in Arizona Land Title and Trust Company v. Safeway Stores, Inc., 6 Ariz.App. 52, 429 P.2d 686. The case at that time came

before us on a petition for review, which we denied because the result was clearly correct. There were disputed facts. The Court af Appeals ordered a trial to be had on the merits, at which the surrounding circumstances could be shown, and at which the existence of any customs or usages pertaining to the word "purchase" could be introduced together with evidence, other than hearsay, showing the nature and validity of Lucy Teach's claim.

On remand, trial was had to the court sitting without a jury. It found for Safeway (this time, on the merits) and Levitz again appealed.

At the trial there was considerable testimony from various persons construing the word "purchase", but none of it reached the dignity of proving either a custom or a usage with reference to the word. A number of real estate men testified that, to them, "purchase" meant "actually to acquire the title." The witness, Winter, with twenty-two years experience in the real estate business, admitted that some people use the word "purchase" to mean the signing of a contract to acquire title, but stated that "they are lay people that I don't consider to be knowledgeable."

The net result of all of the testimony about the word "purchase" was to demonstrate that its meaning depends upon who is using it, and the context in which it is used. Obviously it means different things to different people at different times.

In the absence of any defense, an unambiguous contract will be given effect as written, and the intent of the parties will be ascertained from the words used. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318. The problem in the instant case arises from the fact that the parties to the contract disagree on the meaning of the word "purchase."

There are a number of rules of construction, but the purpose of all of them is to ascertain the intention of the parties at the time the agreement was made. In Rental Development Corporation of America v. Rubenstein Construction

Company, 96 Ariz. 133, 136, 393 P.2d 144, 146, we said:

> "The rule is well established that a court, when construing an agreement, must put itself in the position of the parties and *give effect to their intention as of the time the agreement was made.*" (Italics ours.)

See also 3 Williston on Contracts, Revised Edition, § 618, page 1780, and Restatement of Contracts, § 230.

The intention of Safeway, at the time of the making of the contract, is clearly shown by the record. It was planning a shopping center which required a great deal of space to accommodate the buildings and parking areas included in the project. Unless it could obtain the adjoining St. Pierre property it did not want Levitz's, which, by itself, was too small. There is no doubt, therefore, that the word "purchase" was used by Safeway to mean "acquire title", rather than "sign a contract to acquire title." The issue is whether this intention was communicated to Levitz:

> "* * * A party should be permitted to determine the operative meaning of the words of agreement by proving that both parties so understood them, or *that he so understood them and the other party knew that he did,* or that he so understood them and the other party had reason to know that he did." (Italics ours.) Corbin on Contracts, Vol. 3 § 538, page 59.

See also W. J. Howard and Sons, Inc. v. Meyer, 367 Mich. 300, 116 N.W.2d 752, 755.

The trial court found that:

> "The purpose for which the Levitz property was being purchased required the purchase of * * * [the St. Pierre property]. This was the *intention of* Safeway from the inception and Sam Levitz Furniture Company knew or should have known this to be Safeway's intention."

In addition to the notice imparted to Levitz by the provision in the contract, the testimony showed that a Tucson realtor, named Jackson, discussed with Levitz the necessity of acquiring the adjacent properties, and that a Mr. Pritchard, the realtor who succeeded Mr. Jackson in the deal, "might have" discussed the same point. Mr. Gooder, the Trust Officer in charge of the Levitz property, admitted knowing about the other properties referred to in the Levitz contract. Levitz, himself, admitted, on the stand, that he was told by Mr. Jackson that a prior option was allowed to expire unexercised because Safeway was not able to acquire all of the parcels they wanted. Levitz also admitted that when the contract was executed, Jackson told him that they were then going to deal, because Safeway was in a position to get all of the necessary parcels.

Mr. Levitz appeared to be a knowledgeable witness in the real estate field. The size of the deal indicates that he was not a small individual with no resources or business acumen, dealing with a large corporation. His land was held by a title company before selling to Safeway. He subjected all of Safeway's proposals to the scrutiny of his own attorney and gave written instructions to the title company. He was running a furniture business, which was incorporated, and had been running it for over twelve years. Two of his brothers were stockholders in his corporation and at least one of them was familiar with the deal and had to approve it.

We therefore hold that there was ample evidence to support the trial court's finding that Levitz knew or should have known of Safeway's intention with regard to the purchase of the other properties needed to complete the shopping center project.

The court also found as a fact that:

> "The word 'purchase', as used in the condition precedent in the subject contract, means 'acquisition of title.'"

Levitz attacks this finding as a conclusion of law. We do not agree. It appears that the court meant that the word "purchase" *was intended by the parties to*

**332**

*mean* "acquisition of title." This finding is likewise sustained by ample evidence.

An appellate court may not overturn findings based on competent evidence. Having accepted the trial court's findings, we must recognize the conclusion that flows from them—namely that the contract, properly interpreted, made the sale of the Levitz property contingent upon the actual acquisition by Safeway, of the title to the St. Pierre property—a contingency which never occurred.

The decision of the Court of Appeals is vacated and the judgment of the Superior Court is affirmed.

STRUCKMEYER, V. C. J., and UDALL, McFARLAND and HAYS, JJ., concur.