JACKSON NATIONAL LIFE INSURANCE COMPANY *v.* BAKAIAN

1. EVIDENCE—PAROL EVIDENCE RULE—WRITTEN CONTRACT.
   Courts are restricted by the parol evidence rule from looking behind a written contract where, by its terms, it is complete, unconditional, and unambiguous.

2. EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY.
   Parol evidence may be admissible to explain the true consideration for a contract where it is not apparent and becomes material.

3. EVIDENCE—PROMISSORY NOTE—PAROL EVIDENCE RULE.
   Admission by trial court of parol evidence for the purpose of determining the real intentions of the parties as to the passing of consideration between them on a promissory note *held,* reversible error, where the parol evidence in question was not limited to showing the consideration of the written contract, but sought to change the scope, effect, and obligation clearly cast on the parties by the written contract.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence §§ 1016, 1017.
[2, 3] 30 Am Jur 2d, Evidence § 1056.

Appeal from Common Pleas Court of Detroit, George D. Kent, J. Submitted Division 1 December 10, 1968, at Detroit. (Docket No. 4,583.) Decided February 24, 1969.

Complaint by Jackson National Life Insurance Company, a Michigan corporation, against Martin Bakaian to recover on a promissory note. Judgment for defendant. Plaintiff appeals. Reversed.

*Poole, Littell, Emery & Sutherland* (*J. Patrick Martin,* of counsel), for plaintiff.

BEFORE: McGREGOR, P. J., and FITZGERALD and CYNAR,* JJ.

FITZGERALD, J. One night, apparently in September, 1966, the defendant-appellee and Mr. Thomas, the vice-president and "director of agencies" for plaintiff-appellant, went to a night club together. The 2 men allegedly discussed the possibilities of defendant leaving his employment with another insurance company and coming to work for plaintiff. Defendant signed a note which is not in issue here, having been lost by the plaintiff.

On September 16, 1966, defendant signed another promissory note in return for a check from the plaintiff in the amount of $900. Following is the text of the note:

> "PROMISSORY NOTE
> ROYAL OAK, MICHIGAN
> City and State
>
> $900.00
>
> SEPTEMBER 16, 1966
> For value received MARTIN BAKAIAN (Maker) promises to pay JACKSON NATIONAL LIFE

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

INSURANCE COMPANY, referred to as Company herein, or order, at its offices in Jackson, Michigan, on or before October 16, 1966 (Due Date), the sum of $900.00 (Amount) with interest thereon from the date hereof until paid, at the rate of Six (6%) per annum.

The Company, as holder hereof, is hereby given the unconditional right to set off any amount due hereunder against any or all claims for commissions or other compensations, or amounts due or to become due the undersigned from the Company, without limiting any other remedy it may have.

The aforesaid maturity date of this Note is expressly conditioned upon the continuance of MARTIN BAKAIAN (Maker) as a full time Agent or employee of the Company and in the event such continued relationship shall terminate for any reason whatsoever, it is agreed that the whole of the principal sum of this Note, together with interest, shall become immediately due and payable without further action on the part of the Company.

The undersigned hereby waives presentment for payment, notice of dishonor, protest, and notice of protest and all other defenses by reason of any extension of time of payment hereunder, that may be given by the holder hereof.

/s/ Mike Manogian (Witness)

/s/ Martin Bakaian (Maker)

... ............. (Maker)"

The amount not being repaid, plaintiff sued defendant in the common pleas court for the city of Detroit, and rested its entire case on the note. Defendant recited the above discussion at the night club and then testified in his own defense that Mr. Thomas assured him the $900 was to be a bonus for coming to work for plaintiff, and that the note would not be binding on defendant, being required only for plaintiff's bookkeeping procedures. Defendant argued that the note was intended to represent a

bonus, not a loan, as alleged by plaintiff, and that defendant is not liable on it.   Defendant worked for plaintiff for approximately four months.

Over repeated objections by plaintiff, the lower court admitted this parol evidence and testimony and found that the offer was understood by the parties to be an inducement to change employment, and not just a loan.   It was determined that no cause of action for plaintiff existed.   The court permitted the introduction of the "extrinsic circumstances to show the real intentions" of the parties to the contract regarding the consideration of $900 which passed between them.   Plaintiff, on appeal, admits that an initial inquiry into the execution of a contractual agreement is proper but that error occurred when the court continued to permit defendant to produce parol evidence as to alleged prior oral statements and agreements with plaintiff's agent which directly contradicted a complete, unconditional and unambiguous written contract.

We do not question the generosity and willingness of plaintiff insurance company to make large "loans" to agents of other insurance companies.   We do not inquire into the competitive practices of rival insurance companies for top quality insurance agents, so aptly defined as "piracy" by the lower court. Restrictions are placed on the power of the courts to look behind a written contract, such as this, where it, by its terms, is complete, unconditional and unambiguous.   Defendant admitted that he signed notes without reading them, that he didn't think the note meant what it said, and that he relied totally on the alleged promises of Mr. Thomas.   Defendant did receive $900 and did promise to repay it by October 16, 1966, if he did not continue as a full time employee of plaintiff company.   There was no evidence presented, nor charge made by defendant, that

there was duress, fraud or mutual mistake in the execution of the contract.[1]

For purposes of argument, one might assume that defendant (who did not file a brief on appeal) would allege that his signature was procured by fraudulent means based on promises. *Rood* v. *Midwest Matrix Mart, Inc.,* (1957), 350 Mich 559. Such a charge was not made below, and we hesitate to do it here. *Sutherland* v. *Crane* (1845), Walk Ch 523; *Kulenkamp* v. *Groff, infra.*

The definitive case on the issue is *Kulenkamp* v. *Groff* (1888), 71 Mich 675 (1 LRA 594.) Defendant signed plaintiff's note as a surety, allegedly relying on an oral promise of nonliability made by plaintiff. In answer to defendant's attempt, by parol evidence, to absolve himself when liabilities came due, the *Kulenkamp Case* stated, pp 678, 679:

"It is admitted that the general rule is that oral contemporaneous evidence is not admissible to vary, alter, or contradict the terms of a written instrument. But it is argued that to this rule there are several well-recognized exceptions, when the contest is between the immediate parties to a note. In such case parol evidence is admissible to impeach the consideration, to show fraud or illegality in its inception, or that it was delivered conditionally, or for a specified purpose only. See *Farwell* v. *Ensign* (1887), 66 Mich 600. The defendant's counsel insist that their claim, as before set forth, comes within the exceptions as to fraud and a delivery for a specified purpose.

"As far as the claim of fraud is concerned, it is not tenable. The signature of Groff was not procured by false pretenses, by the statement of any fact as existing which did not exist, but upon false

---

[1] The general exceptions to the parol evidence rule, to be discussed *infra,* where oral evidence may be admitted to nullify the written terms otherwise valid on their face. *Shannon* v. *Polish Falcons of America, Nest No. 86* (1957), 348 Mich 92.

promises which have not been performed.  It is no more nor less than the nonperformance of an oral agreement made at the time the note was signed, and which oral agreement was totally at variance with the terms of the written contract as set forth in the note.  This cannot be considered such a fraud as would nullify the note.

"If proof of this unperformed agreement not to hold Groff upon this note, in plain contradiction to its terms, can be admitted to destroy his liability upon it, then any unperformed oral agreement made at the time a written contract or note is executed may be admitted, under the claim of fraud, to defeat the terms and purposes of the written agreement.  The maker of a note, as well as the surety or indorser, may say—

" 'It is true, I signed the note, but it was agreed I was not to pay it, and the collection of it is a fraud upon me.'

"Written instruments, under the admission and use of such proof to defeat them, would be of but little value, and altogether uncertain, and of no more strength than oral agreements.  *  *  *

"As before shown, there was no such fraud or illegality in the inception of this instrument as would vitiate it.  *  *  *  It was delivered under the promise that, although Groff had solemnly agreed in writing to pay it, he should not be holden upon it.  This is the substance of the whole matter.  There was no condition attached to the delivery except this, that the oral agreement not to pay should supersede and control the written contract to pay.  If this defense can be allowed, then, as before said, in speaking of the claim of fraud, every promissory note, as between the immediate parties thereto, and every contract in writing, is open to parol proof that it does not correctly represent the agreement made, and oral evidence may be given to contradict, alter, or vary such written agreement.

"This is not the law in this State.  (Citing cases.)"

Reversal was had, however, for a failure of consideration. Here, the trial court, as noted above, considered the parol evidence in order to determine the real intentions of the parties as to the admitted passing of consideration between them. There is no question of want or failure or illegality of the consideration as it is clearly stated on the face of the instrument for which defendant received a check which he cashed.[2] The trial court wished to determine whether the stated $900 was or was not the *true* consideration which passed between the parties.

Parol evidence may be admissible to explain the true consideration for a contract where it is not apparent and becomes material. *Smith* v. *Maxey* (1915), 186 Mich 151; *Edoff* v. *Hecht* (1935), 270 Mich 689; *Kulenkamp, supra.* However, where the parol evidence is not limited to showing the consideration of a written contract, but seeks to change the scope, effect and obligation clearly cast on the parties by the written contract, then it should be rejected. *Foley* v. *Grand Rapids & Indiana Railway Co.* (1912), 168 Mich 496.[3] Such appears to be the situation here and we accordingly hold that this investigation by the trial court into the background of the consideration stated on the face of the written contract, by admission of parol evidence, was erroneous.

Reversed and remanded with direction to enter judgment for plaintiff. Costs to appellants.

All concurred.

---

[2] *Maltz* v. *Fletcher* (1884), 52 Mich 484; also, see promissory note case of *Garton* v. *Union City National Bank* (1876), 34 Mich 279, where a clear reference was found on the face of the note that it did not only embody the apparent consideration, but that other consideration also existed.

[3] Testimony of a contemporaneous oral agreement that a note was not to be paid in accordance with its terms does not go to the consideration of the note where the consideration was plaintiff's check, endorsed by defendant and paid him, and such testimony is incompetent evidence. *Anderson* v. *Engard* (1926), 236 Mich 221.