GAYDOS v WHITE MOTOR CORPORATION

1. MASTER AND SERVANT—CONTRACTS—UNILATERAL CONTRACTS—CON-
   SIDERATION—SEVERANCE PAY.

   A policy adopted by a defendant corporation providing for sever-
   ance pay when employees were terminated at the company's
   request was not merely a unilaterally promulgated policy or a
   gratuity; the adoption of the policy by the company constituted
   an offer of a contract and consideration for a unilateral con-
   tract upon which the employees had the right to rely was
   supplied as the employees continued to work thereafter.

2. CONTRACTS—INTERPRETATION OF CONTRACTS—AMBIGUITY OF TERMS
   —EVIDENCE—EXTRANEOUS EVIDENCE.

   The conduct of the parties cannot be used to prove that a
   contract means something other than what appears on its face
   when the contract is clear and unambiguous; only in cases of
   ambiguity in the terms of a written contract will courts resort
   to the use of extraneous evidence.

3. CONTRACTS—INTERPRETATION OF CONTRACTS—PAROL EVIDENCE—
   UNILATERAL CONTRACTS.

   Refusal to allow introduction of parol evidence offered by a
   defendant to support its interpretation of a unilateral contract
   written by the defendant was proper; such evidence would have
   resulted in a one-sided, self-serving interpretation of the de-
   fendant's intention and construction of the contract.

4. TRIAL—DIRECTED VERDICT—EVIDENCE—TERMINATION OF EMPLOY-
   MENT—SEVERANCE PAY.

   Denial of a defendant's motion for a directed verdict in an action

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 53 Am Jur 2d, Master and Servant § 81.
   Construction and effect of severance or dismissal pay provisions of
   employment contract or collective labor agreement. 147 ALR 151,
   s. 40 ALR2d 1044.
[2] 17 Am Jur 2d, Contracts §§ 78, 294.
[3] 17 Am Jur 2d, Contracts §§ 5, 77.
[5] 53 Am Jur, Trial § 580.
[6] 53 Am Jur, Trial § 555.

by employees for severance pay as a result of a sale of a unit of the defendant corporation was proper where there was evidence that the employees had in fact been terminated by the defendant corporation, because a court must view the evidence in the light most favorable to the party against whom such a motion is directed; the question of whether the defendant's severance pay contract applied to the plaintiffs was for the jury.

5. TRIAL—INSTRUCTIONS TO JURY—EVIDENCE.

Refusal to give a requested charge to the jury was proper where the evidence did not warrant such an instruction and the instruction which was given was legally and factually correct.

6. TRIAL—CONFUSION OF JURY—ARGUMENTS OF COUNSEL—EVIDENCE— INSTRUCTIONS TO JURY.

A defendant corporation whose counsel in an action by employees for severance pay was allowed to argue in his closing statement regarding the past practices in application of a severance pay policy, where testimony regarding those practices was not allowed and a proposed jury instruction on those practices was rejected, cannot complain upon appeal that the jury was thereby confused; any such confusion would necessarily have resulted from the action of defendant's counsel.

Appeal from Ingham, Marvin J. Salmon, J. Submitted Division 2 May 9, 1974, at Lansing. (Docket No. 17269.) Decided June 26, 1974. Leave to appeal denied, 392 Mich 800.

Complaint by John Gaydos and others against White Motor Corporation for payment of severance pay. Judgment for plaintiffs. Defendant appeals and 12 plaintiffs cross-appeal. Affirmed.

*Fraser, Trebilcock, Davis & Foster* (by *Eugene F. Townsend, Jr.* and *Michael E. Cavanaugh),* for plaintiffs.

*Foster, Lindemer, Swift & Collins, P. C.* (by *David C. Coey),* for defendant.

Before: BRONSON, P. J., and HOLBROOK and O'HARA,* JJ.

HOLBROOK, J. The plaintiffs, numbering 135, in this action were former employees of defendant White Motor Corporation. They had been employed by defendant for a period of at least six months prior to July 1, 1971. They were employees of what was designated as the P.E.C. Unit, a part of the Diamond Reo Truck Division of defendant. That unit maintained facilities in Chicago, Illinois, and in Lansing, Michigan. Thirty-six of the plaintiffs were employed in Lansing and the remainder in Chicago.

On July 1, 1971, the P.E.C. Unit was sold by defendant to AM General Corporation. Included in the sale agreement was a provision that: "Seller shall cooperate with Buyer to endeavor to persuade the employees of the P.E.C. Division to become employees of Buyer after the Closing Date". The plaintiffs in this action continued to be employed at their same jobs, but as employees of AM General Corporation. Plaintiffs were salaried, non-union personnel. In accordance with the agreement to cooperate, defendant neither offered nor solicited other employment within White Motor Corporation to plaintiffs;[1] such action would have necessitated "bumping someone else". A letter from defendant's personnel director was sent to all P.E.C. employees which provided:

"This is to advise you that the P.E.C. operation has been acquired by the AM General Corporation, effective July 1, 1971.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Union employees had been informed that they could remain with White Motor, if they so desired; no such acknowledgment was given to non-union employees.

"As a result you will be employed by AM General, who will continue operations under the same general terms and conditions that are now in effect.

"You will be advised of further developments within a short period of time."[2]

At the time of closing, the plaintiffs were taken off the White Motor payroll. Herman Everhardus, Director of Personnel at the time of sale, testified that if any employees wished to stay with defendant corporation, they would have to come to him and request to so do.

By memo specifying the effective date to be July 15, 1966, the White Motor Corporation adopted a general office policy and procedure on severance pay. On April 11, 1967, A. A. Axline, Director of Personnel, dispersed to all the department heads a memo on severance pay which was, in effect, a somewhat shortened version of the previously promulgated general office policy on severance pay. On the day before, Axline had dispersed to all department heads the following general memorandum:

"The following severance pay policy has been approved for this Division:

"Severance pay is given to non-exempt non-union salary employees with more than six (6) months' service terminated at the Company's request. Severance pay is given the employee instead of two (2) weeks' termination notice. An employee who retires, resigns, is discharged for cause, or is terminated for any reason at age 65 or over does not receive severance pay."[3]

On August 9, 1971, plaintiffs filed suit against

[2] This letter effectively informed all P.E.C. employees that they would no longer be employed by White Motor Corporation.

[3] AM General Corporation had no provision for severance pay and individuals terminated since the acquisition of the P.E.C. Unit by that corporation have not received severance pay.

defendant based on contract for recovery of severance pay. With the exception of ten of the named plaintiffs, none testified personally.[4] Defendant contended that the severance pay contract was partially oral and that, as such, parol evidence should be admitted to supplement and facilitate interpretation of the written memorandum. The trial court held that the contract was complete and unambiguous and refused to admit parol evidence. At the conclusion of plaintiffs' case in chief and again at conclusion of trial, defendant moved for a directed verdict, which motion was denied on both occasions. The jury returned a verdict in favor of the plaintiffs. Defendant here appeals and asserts that it was entitled to a directed verdict as to all plaintiffs from whom nothing was heard as to the surrounding circumstances of their change of employment. Defendant argues that the trial court erred by excluding from the jury evidence of the application of its "unilaterally promulgated policy". Defendant further asserts as erroneous the court's refusal to give an instruction as requested, and that it was prejudiced due to the confusion arising from the trial court's refusal to permit evidence of defendant's conduct in similar circumstances while permitting argument thereon.

Twelve of the plaintiffs have taken a cross-appeal and contend that the verdict was erroneous in that their recovery should have been for a greater amount. They contend that the "years of service" to be used in calculating the amount of severance pay should include that time spent with the Diamond Reo Company prior to its acquisition by White Motor in 1957. Their appeal is taken from denial of a judgment notwithstanding the verdict.

Defendant argues that while the plaintiffs' rela-

---

[4] Depositions of four were read into evidence.

tionship with the defendant terminated there was no termination within the purview of the severance pay policy, *i.e.*, the policy was inapplicable where employees did not become unemployed. Defendant, thus, contends that parol evidence of application of the policy in other instances should have been admitted to facilitate understanding by the jury of what, in effect, was a condition of the severance pay policy. In its answer to plaintiffs' complaint, defendant pled an affirmative defense that "the defendant's policy concerning severance pay was merely an expression of desire or good intention, without any binding commitment for the benefit of the employees concerned".[5] We cannot agree that the severance pay provision was merely a "unilaterally promulgated policy" or a gratuity. The adoption of the described policy by defendant constituted an offer of a contract. *Cain v Allen Electric & Equipment Co,* 346 Mich 568, 579; 78 NW2d 296, 302 (1956). As the employees continued to work thereafter, consideration was supplied for a unilateral contract, upon which the employees had the right to rely. *Cain, supra; Clarke v Brunswick Corp,* 48 Mich App 667; 211 NW2d 101 (1973); see, also, *Anthony v Jersey Central Power & Light Co,* 51 NJ Super 139; 143 A2d 762 (1958); *Adams v Jersey Central Power & Light Co,* 36 NJ Super 53; 114 A2d 776 (1955), *aff'd* 21 NJ 8; 120 A2d 737 (1956); *Chinn v China National Aviation Corp,* 138 Cal App 2d 98; 291 P2d 91 (1955); *Hunter v Sparling,* 87 Cal App 2d 711; 197 P2d 807 (1948); *Hercules Powder Co v Brookfield,* 189 Va 531; 53 SE2d 804 (1949); *Mace v Conde Nast Publications, Inc,* 155 Conn 680; 237 A2d 360 (1967); and, generally, 40 ALR2d 1044, 1046–1048.

---

[5] It is noteworthy that defendant's counsel stated, during oral argument, that he had no disagreement with "the law in plaintiffs' brief", which "law" asserts that the "policy" was a unilateral contract.

In *Willets v Emhart Mfg Co,* 152 Conn 487, 490–491; 208 A2d 546, 548 (1965), the Supreme Court of Errors of Connecticut held that separation pay is not analogous to unemployment compensation but rather is "a kind of accumulated compensation for past services and a material recognition of their past value".

Thus, the focus of the case was interpretation of a unilateral contract. Only in cases of ambiguity in the terms of a written contract will courts resort to the use of extraneous evidence. *Stott v Stott Realty Co,* 306 Mich 492, 499; 11 NW2d 215, 218 (1943); 17 Am Jur 2d, Contracts, § 273, p 683. When the contract is clear and unambiguous, the conduct of the parties cannot be used to prove that the contract means something other than what appears on its face. 17 Am Jur 2d, *supra,* § 274, p 688; 17A CJS, Contracts, § 295, p 59.

"While the construction placed on a contract by one of the parties may have bearing on the meaning to be accorded to the agreement, and a party's construction of his own language in a contract is the highest evidence of his own intention, the meaning of the contract cannot be established by the construction placed on it by one of the parties, or by only some of the parties, unless such interpretation has been made to and relied on by the other party or parties, or has been known to, and acquiesced in, by the other party or parties, or, according to some authorities, it is against the interest of the party making it." 17A CJS, Contracts, § 325(2), pp 248–249.

Where parol seeks to change the clear scope, effect, and obligation of the written contract, it should be rejected. *Jackson National Life Insurance Co v Bakaian,* 16 Mich App 26, 32; 167 NW2d 462, 465 (1969). A onesided, self-serving interpretation is of no assistance in interpretation. *Davis v Kramer Brothers Freight Lines, Inc,* 361 Mich 371,

376; 105 NW2d 29, 31–32 (1960); *W J Howard & Sons, Inc v Meyer,* 367 Mich 300, 308; 116 NW2d 752, 756 (1962). The allowance by the trial court of the evidence desired to be introduced by the defendant would have been erroneous in that it would have been a onesided, self-serving interpretation of the defendant's intention and construction of the contract. Moreover, the trial court possesses a great deal of discretion in ruling on the admissibility of evidence. *Boyer v Boyer,* 30 Mich App 623, 626; 186 NW2d 842, 843 (1971); *Battle Creek Food Co v Kirkland,* 298 Mich 515; 299 NW 167 (1941). We here find no abuse of discretion.

When a trial judge is faced with a motion for directed verdict, he must view the evidence in the light most favorable to the party against whom the motion is directed. *Cullins v Magic Mortgage, Inc,* 23 Mich App 251, 256; 178 NW2d 532, 534 (1970). Clearly, the 135 employees were no longer employed by White Motor Corporation and therefore terminated; likewise it was clear that this was so not because of any action on their part. The interpretation of whether the severance pay contract applied to the plaintiffs was for the jury. See *Guilmet v Campbell,* 385 Mich 57, 69; 188 NW2d 601, 606 (1971). The trial court correctly denied the defendant's motion as there was evidence of termination of all plaintiffs and each need not have testified personally. There was testimony by the comptroller of Diamond Reo at the time of sale, the manager of salaried employees, and the president of White Motor Corporation, among others, to the effect that the employees of the P.E.C. Unit *had been terminated.* Further, all employees of the P.E.C. Unit were sent a letter from the secretary and general counsel of White Motor which provided:

"I understand that you have inquired on behalf of the employees of our former Diamond Reo Division as to the status of the Common Stock purchased for their account under the White Motor Corporation Employee Stock Purchase Savings Plan.

"This is to assure you and those employees involved that our Board of Directors has amended Section 12.02 of the Plan, subject to approval of the Internal Revenue Service, to provide *that employees terminated as a result of the disposition of the P.E.C. unit* and the sale of the Diamond Reo Division will not lose the Common Stock of White Motor Corporation purchased for their account with the Company contributions. In effect, such employees will lose none of their rights except the right to continue as members of the Plan." (Emphasis supplied.)

Also, it was evident that none of the plaintiffs had retired, resigned, been discharged for cause or were terminated after age 65.

Defendant further contends that the trial court erred in refusing its "proffered instruction number three, or any instruction, to the effect that the jury could take into consideration what the practice was of White Motor Corporation pertaining to severance pay on other occasions in determining the terms and conditions of the severance pay policy". The jury was instructed that:

"White Motor Corporation contends the severance policy was adopted for the Diamond Reo Truck Division because so much of its work was subject to government contract and consequently the work might terminate on fairly short notice without any long term job-continuity. Therefore, as an alternative to that lack of job security it was the purpose of severance pay to provide some financial carry-over in the event there was a layoff with the employee being out of work through no fault of their own and because company operations put the employee out of a job. White Motor Corporation contends however that it was only where the employee

suffered a loss of his job, that the severance pay would apply. It is White's contention that the policy providing for severance pay was never applied, or intended to apply, to a situation where the employee's job never terminated and he continued right on in the same job, at the same place and for the same pay without being put out of work."

As to defendant's assertion, the trial court opined that much of the proposed instruction was included in the jury charge given and that refusal to charge on past practices was based upon the fact that such evidence had been ruled inadmissible. The evidence did not warrant the proposed charge and the instruction given was legally and factually correct. See *Grenawalt v Nyhuis,* 335 Mich 76, 86; 55 NW2d 736, 741 (1952); *Fulton v Ewing,* 336 Mich 51, 56; 57 NW2d 441, 444 (1953).

Lastly, defendant argues that error may be predicated upon what it asserts was "hopeless confusion in the collective mind of the jury". This, defendant says, was created by the inconsistencies of not allowing testimony of past practices or instructing on such practices, but allowing argument thereupon. First, a review of the record does not reveal that the jury was necessarily prejudicially confused and, secondly, defendant cannot now be allowed to complain on the basis of its argument to the jury as allowed by the trial court. It would be incongruous for us to allow defendant to base reversal upon confusion, if any, which necessarily resulted from its counsel's action.

By cross-appeal, 12 of the plaintiffs have taken a position which is polar to their position as appellees in the appeal. They argue that the term "years of service" in the severance pay policy was so ambiguous as to necessitate the introduction of parol evidence to explain its meaning. The trial

court denied parol testimony for this purpose. Consistent with our discussion above, we find that the policy as promulgated was plain, clear and concise, and that, therefore, parol testimony was not available. The trial court was correct in denying cross-appellants' request for judgment notwithstanding the verdict on this point. This was a proper question for jury determination and one not to be decided as a matter of law. See, generally, 4 Callaghan's Michigan Pleading & Practice, § 36.361, pp 376–379.

Affirmed. Costs to plaintiffs, except the 12 who have failed to prevail on their cross-appeal.

All concurred.