KLEIN v HP PELZER AUTOMOTIVE SYSTEMS, INC

Docket No. 310670. Submitted February 11, 2014, at Detroit. Decided
    July 8, 2014, at 9:00 a.m. Leave to appeal sought.
        Douglas J. Klein and Amy Neufeld Klein brought an action in the
    Oakland Circuit Court against HP Pelzer Automotive Systems,
    Inc., alleging breach of an express contract, breach of an implied
    contract, and promissory estoppel. During a restructuring of HP
    Pelzer in 2009 that resulted in layoffs of some of its employees, the
    company's chief executive officer (CEO) had sent letters to various
    key employees, including plaintiffs, that stated that if their em-
    ployment with HP Pelzer was "terminated or ended in any manner
    in the future," they would be entitled to minimum severance pay
    equal to a full year's worth of compensation. Plaintiffs continued
    to work. Subsequently, in letters to plaintiffs in 2011, the compa-
    ny's president indicated that the terms of the November 2009
    letters were rescinded, effective immediately. Plaintiffs' attorney
    sent a letter rejecting that rescission, and plaintiffs subsequently
    resigned from HP Pelzer, following which they brought this suit.
    Plaintiffs moved for summary disposition. The court, Rudy J.
    Nichols, J., concluded that the 2009 letters were clear and unam-
    biguous offers to pay severance but also determined that summary
    disposition was premature and permitted additional discovery on
    the question of the CEO's actual authority to bind HP Pelzer to
    the alleged severance-pay contracts. After discovery was com-
    pleted, both parties moved for summary disposition. The court
    held that a unilateral contract existed, concluding that the fact
    that plaintiffs had continued to work after the CEO's offer of
    severance payments to them constituted acceptance of his offers
    and that HP Pelzer was therefore precluded from subsequently
    revoking those offers. The court awarded plaintiffs damages and
    dismissed the breach-of-implied contract and promissory estoppel
    counts as moot. HP Pelzer appealed.
        The Court of Appeals held:
        1. The trial court erred by concluding that HP Pelzer breached an
    express contract to make severance payments to plaintiffs. A unilat-
    eral contract is one in which the promisor does not receive a promise
    in return as consideration. A typical employment contract can be

described as a unilateral contract in which the employer promises to pay an employee wages in return for the employee's work. In essence, the employer's promise constitutes the terms of the employment agreement and the employee's action or forbearance in reliance on the employer's promise constitutes sufficient consideration to make the promise legally binding. In those circumstances, there is no contractual requirement that the promisee do more than perform the act on which the promise is predicated in order to legally obligate the promisor. The 2009 letters did not create unilateral severance-pay contracts, however, because the letters did not require plaintiffs' action or forbearance in reliance on the company's promise. Although its CEO indicated that the purpose of the letters was to express the company's commitment to plaintiffs' continued employment, plaintiffs need not have continued their employment to collect the severance payments. The phrase "ended in any manner in the future" rendered the CEO's promise a gratuity rather than a unilateral offer of a contract. Plaintiffs were not required to work at all after receiving the letters and could have resigned immediately and collected the severance pay offered. Without sufficient consideration, the CEO's promise in the letters was not legally binding. Instead, the letters created a policy that could be modified or revoked. Absent a vested right to severance payments, HP Pelzer could revoke the policy as it did in the 2011 letters. Therefore, by the time plaintiffs resigned, the severance-pay policy had already been revoked and plaintiffs were not entitled to severance payments.

2. Although not reached by the trial court after the court found an express contract, plaintiffs' claim of breach of an implied contract could not have survived summary disposition. Plaintiffs' breach-of-implied-contract claim derived from the discharge-for-cause doctrine in *Toussaint v Blue Cross & Blue Shield of Mich*, 408 Mich 579 (1980), which held that a provision of an employment contract providing that an employee would not be discharged except for cause is legally enforceable, even if the contract is indefinite or not for a definite term. The provision could become part of the contract (1) by express oral or written agreement or (2) as a result of an employee's legitimate expectations grounded in an employer's policy statements. The Supreme Court subsequently held, however, that a written discharge-for-cause personnel policy (an implied contract) could be unilaterally modified by an employer without explicit reservation of that right at the outset. The legitimate-expectations test has not been extended to severance-pay policies. While plaintiffs claimed that they rejected the 2011 letters revoking the severance-pay policy, no agreement for severance existed and HP Pelzer unilaterally made changes to the policy to best adapt it to changing business conditions. If

plaintiffs were displeased by the change in policy, they were free to resign, but they were not entitled to severance payments upon their resignation by virtue of an implied contract.

3. Again, while not reached by the trial court, plaintiffs' promissory estoppel claim could also not have survived summary disposition. The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances requiring that the promise be enforced to avoid injustice. The 2009 letters articulated a severance-pay policy that could be changed at will, not a promise.

Grant of summary disposition reversed, damages award vacated, and case remanded for entry of summary disposition on all counts in HP Pelzer's favor.

*Michael J. Hamblin* for plaintiffs.

*Vercruysse Murray & Calzone* (by *Robert M. Vercruysse* and *Gary S. Fealk*) for defendant.

Before: O'CONNELL, P.J., and WILDER and METER, JJ.

WILDER, J. Defendant, HP Pelzer Automotive Systems, Inc., appeals as of right an order granting summary disposition to plaintiffs, Douglas J. Klein and Amy Neufeld Klein.[1] On appeal, defendant argues that the trial court erred by finding that defendant breached a contract to make severance payments to plaintiffs upon their resignation and therefore erred by granting summary disposition to plaintiffs. We reverse and remand for the trial court to enter an order in favor of defendant.

I

In 2009, during the "economic downturn," defendant undertook a radical restructuring of its business. The

---

[1] Plaintiffs are married to each other.

restructuring resulted in layoffs of some of defendant's employees, and it was a stressful time for defendant's staff. However, defendant's chief executive officer and president, Dean Youngblood, wanted to retain some "key individuals," including plaintiffs, during the restructuring. Consistently with this desire, Youngblood sent a letter dated November 2, 2009, to plaintiffs, stating in relevant part:

> Amy Klein
>
> Amy, the purpose of this letter is to document to you the commitment of HP Pelzer Automotive Systems, Inc. for your continued employment with the company.
>
> In the next few weeks / months we will begin to restructure the company. This restructuring will result in the elimination of certain positions within the company.
>
> This letter acknowledges that you and your position will not be involved in the restructuring activities.
>
> This letter further acknowledges, if your employment with HP Pelzer Automotive Systems Inc is terminated or ended in any manner in the future you will be entitled to a minimum severance pay equal to 1 (one) full year compensation.
>
> The full year compensation will be based on the previous 12 months salary, bonus, etc from the previous 12 months.
>
> Thank you for your continued support.

Youngblood sent a virtually identical letter to Douglas Klein the same day. Plaintiffs continued to work for defendant during the restructuring. Subsequently, in a letter dated June 7, 2011, defendant's then president and chief operations officer, John Pendleton, stated the following to Amy Klein, in relevant part:

> Dear Amy,
>
> I am writing in connection with a letter you received from Dean Youngblood, dated November 2, 2009.

As you know, in that letter, Mr. Youngblood addressed the fact that in the "next few weeks and months, HP Pelzer Automotive Systems would be restructuring the company and that certain positions would be eliminated". Although Mr. Youngblood informed you that you and your position would not be involved in the restructuring, he stated that if your employment was in fact terminated or otherwise ended, you would be granted a severance equal to one year of compensation.

As you know, the restructuring referenced in Mr. Youngblood's November 2, 2009 letter has now occurred and the economic difficulties that prompted the restructuring have eased.

Accordingly, please be advised that Mr. Youngblood's letter of November 2, 2009 and the severance terms outlined therein are hereby rescinded effective immediately.

Again, Douglas Klein received a virtually identical letter. At the conclusion of the letters to plaintiffs, Pendleton reminded them that defendant is an at-will employer.

On June 8, 2011, plaintiffs' counsel sent a hand-delivered letter to Pendleton and the corporate human resources manager at defendant, which provided in relevant part:

. . . HP Pelzer agreed in writing that if either Mr. or Mrs. Klein's "employment with HP Pelzer Automotive Systems, Inc. is terminated or ended in any manner in the future you will be entitled to a minimum severance pay equal to 1 (one) full year compensation." The agreements for both Mr. and Mrs. Klein further state that "[t]he full year compensation will be based on the previous 12 months salary, bonus, etc. from the previous 12 months." Copies of the signed letter agreements for both Mr. and Mrs. Klein are enclosed for your ready reference.

Mr. and Mrs. Klein have forwarded Mr. Pendleton's June 7, 2011 letter purporting to rescind the referenced

letter agreements. Be advised that such a purported rescission is not legally binding and is hereby categorically rejected.

The June 8, 2011 letter also provided, "Mr. and Mrs. Klein are seriously considering retirement from HP Pelzer and would like a computation from the company of the amount of the severance payment they can each expect to receive based on the referenced letter agreements." On July 19, 2011, plaintiffs sent separate letters of resignation to Pendleton and the corporate human resources manager resigning from defendant and stating that their resignations were effective on August 2, 2011.

Plaintiffs filed a three-count complaint against defendant, alleging breach of express contract, breach of implied contract, and promissory estoppel. Plaintiffs' complaint alleged that, under Youngblood's 2009 letters, they were entitled to severance payments from defendant based on the "year" of earnings before their resignations.

Before the close of discovery, plaintiffs filed a motion for summary disposition pursuant to MCR 2.116(C)(10), alleging that there was no genuine issue of material fact, except for damages, with respect to Count I (breach of express contract). Plaintiffs argued that the 2009 letters were unilateral offers by defendant of severance payments, which they accepted by continuing to work after the offers were made. Citing *Cain v Allen Electric & Equip Co*, 346 Mich 568; 78 NW2d 296 (1956), plaintiffs argued that the alleged offers could not be revoked once they were accepted. Defendant opposed the motion for summary disposition, arguing *inter alia* that (1) because it did not terminate or end plaintiffs' employment, plaintiffs were not entitled to severance payments, (2) the 2009 letters

articulated a severance-pay policy that could be revoked or amended by defendant at any time and that the policy was revoked by the June 7, 2011 letters, and (3) Youngblood lacked actual authority to bind defendant to the alleged promises for severance payments, but further discovery was required regarding this factual question.

The trial court concluded that the 2009 letters were clear and unambiguous offers to make severance payments. However, the trial court also determined that summary disposition was premature and permitted additional discovery on the question of Youngblood's actual authority to bind defendant to the alleged severance-pay contracts.

After discovery was completed, both parties filed motions for summary disposition. In their second motion for summary disposition, plaintiffs argued that defendant had failed to produce any evidence that Youngblood lacked actual authority to bind defendant to the alleged severance-pay contracts. Defendant responded that Youngblood lacked actual authority to make an *irrevocable* promise to provide severance payments because he was obligated to follow defendant's policies, including the policy that compensation, benefits, and policies could be modified or revoked at any time.

In defendant's motion for summary disposition, defendant argued that the trial court had decided the first motion for summary disposition prematurely because plaintiffs' depositions were not part of the record at that time. Defendant cited plaintiffs' admissions in their depositions that Youngblood never promised they would receive severance payments if they resigned. Defendant further argued that the plain language of the 2009 letters did not allow for severance upon resigna-

tion and that it is clear that the 2009 letters were designed to encourage plaintiffs not to resign—not to encourage them to resign and collect severance pay. Defendant further argued that any benefits were only intended to be paid during the restructuring period and continued employment was a condition of the agreement, if any agreement existed, and that plaintiffs knew that their compensation and benefits could be revoked or changed at any time because the 2009 letters did not require performance. Defendant also contended that if plaintiffs could accept the severance provision in the 2009 letters by continuing to work, they also accepted the June 7, 2011 letters (rescinding the severance provision) by continuing to work. Finally, defendant again argued that Youngblood lacked actual authority to make an *irrevocable* promise on behalf of defendant to provide severance payments and that, with respect to their claim of promissory estoppel, plaintiffs did not forbear from resigning.

The trial court found that defendant had offered no evidence to refute plaintiffs' assertion that Youngblood had actual authority to bind defendant to pay the severance at issue, and once again concluded that Youngblood's 2009 letters to plaintiffs were promises to pay severance, which entitled plaintiffs to severance payments upon their resignations from defendant. Citing *Cain*, the trial court held that the fact that each plaintiff continued to work after Youngblood's offer of severance payments to them constituted acceptance of his offers and that defendant was therefore precluded from subsequently revoking the severance offers. In its May 30, 2012 order, the trial court awarded Amy $106,744.90 and Douglas $91,222.02. The trial court also dismissed Counts II (breach of implied contract) and III (promissory estoppel) as moot.

II

A

On appeal, defendant argues that the trial court erred by concluding that a unilateral severance-pay contract existed. We agree.

1

The existence and interpretation of a contract are questions of law, which this Court reviews de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). This Court also reviews de novo the trial court's grant of summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).

Plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(10), which tests the factual sufficiency of the complaint. *Urbain v Beierling*, 301 Mich App 114, 122; 835 NW2d 455 (2013). In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. MCR 2.116(G)(5); *Tienda v Integon Nat'l Ins Co*, 300 Mich App 605, 611-612; 834 NW2d 908 (2013). Summary disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Tienda*, 300 Mich App at 611; MCR 2.116(C)(10).

2

" 'A contract must be interpreted according to its plain and ordinary meaning.' " *Wells Fargo Bank, NA v*

*Cherryland Mall Ltd Partnership (On Remand)*, 300
Mich App 361, 386; 835 NW2d 593 (2013), quoting
*Holmes v Holmes*, 281 Mich App 575, 593; 760 NW2d
300 (2008).

> "Under ordinary contract principles, if contractual lan-
> guage is clear, construction of the contract is a question of
> law for the court. If the contract is subject to two reason-
> able interpretations, factual development is necessary to
> determine the intent of the parties and summary disposi-
> tion is therefore inappropriate. If the contract, although
> inartfully worded or clumsily arranged, fairly admits of but
> one interpretation, it is not ambiguous. The language of a
> contract should be given its ordinary and plain meaning."
> [*Wells Fargo*, 300 Mich App at 386, quoting *Holmes*, 281
> Mich App at 594.]

Again, the trial court concluded, and plaintiffs main-
tain on appeal, that a unilateral severance-pay contract
existed.

> "A unilateral contract is one in which the promisor does
> not receive a promise in return as consideration. 1 Restate-
> ment Contracts, §§ 12, 52, pp 10-12, 58-59. In simplest
> terms, a typical employment contract can be described as a
> unilateral contract in which the employer promises to pay
> an employee wages in return for the employee's work. In
> essence, the employer's promise constitutes the terms of
> the employment agreement; the employee's action or for-
> bearance in reliance upon the employer's promise consti-
> tutes sufficient consideration to make the promise legally
> binding. In such circumstances, there is no contractual
> requirement that the promisee do more than perform the
> act upon which the promise is predicated in order to legally
> obligate the promisor." [*Sniecinski v Blue Cross & Blue
> Shield of Mich*, 469 Mich 124, 138 n 9; 666 NW2d 186
> (2003), quoting *In re Certified Question*, 432 Mich 438, 446;
> 443 NW2d 112 (1989).]

Both parties and the trial court relied heavily on *Cain*,
346 Mich 568. In *Cain*, the employer issued a personnel

policy, which among other provisions included a termination policy that provided that "an 'executive' having 5 to 10 years employment should be entitled to 2 months termination pay." *Id.* at 571. The personnel policy also included the following caveat: " 'Of course such policies cannot be complete and are subject to change or amendments either through necessity created by laws or for other reasons that may come to our attention.' " *Id.* at 570. The employee plaintiff subsequently resigned, effective December 15, 1954. *Id.* at 571. On October 14, 1954, before the effective date of the employee's resignation, the employer fired the employee, effective immediately. *Id.* Then, the employer's board of directors passed a motion to deny termination pay to the employee. *Id.* at 572.

Our Supreme Court held that the termination policy was an offer of a contract, which the employee accepted by continuing employment beyond the five-year term required by the policy. *Id.* at 579-580. Because the employee accepted the offer, the company was called upon to perform, preventing the company from changing the policy as the board of directors tried to do with its motion to deny termination pay to the employee. *Id.* at 580.

In *Gaydos v White Motor Corp*, 54 Mich App 143, 146; 220 NW2d 697 (1974), employees were promised severance pay (in lieu of two weeks' termination notice) if they had more than six months of service with the employer. This Court concluded that, by the employees' continuing to work after the promulgation of the policy, "consideration was supplied for a unilateral contract, upon which the employees had the right to rely." *Id.* at 148.

The facts of this case are distinguishable from *Cain* and *Gaydos*. The 2009 letters at issue here did not create unilateral severance-pay contracts because the letters did not require plaintiffs' action or forbearance

in reliance on the employer's promise. *Sniecinski*, 469 Mich at 138 n 9. In *Cain*, the employee was required to work between 5 and 10 years to earn 2 years of termination pay. In *Gaydos*, the employees were required to work 6 months to earn severance pay. In this case, although Youngblood wrote that the purpose of the 2009 letters was to express defendant's commitment to plaintiffs' continued employment with defendant, plaintiffs need not have continued their employment to collect the severance payments. Again, the letters provided:

> This letter further acknowledges, if your employment with HP Pelzer Automotive Systems Inc is terminated or *ended in any manner in the future* you will be entitled to a minimum severance pay equal to 1 (one) full year compensation. [Emphasis added.]

The phrase "ended in any manner in the future" renders Youngblood's "promise" a gratuity and not a unilateral offer of a contract. As defendant correctly argues, plaintiffs were not required to work at all after receiving the letters. Rather, the plain language of the letters enabled plaintiffs to resign immediately and collect the severance pay offered.[2] The letters required no action or forbearance. Without sufficient consideration, defendant's promise in the letters was not legally binding. *Id.*

The facts of this case are similar to the facts in *Kolka v Atlas Chem Indus*, 13 Mich App 580; 164 NW2d 755 (1968). In *Kolka*, the plaintiff had been on disability leave for approximately one year when the employer instituted

---

[2] We reject defendant's alternative argument that the 2009 letters would not allow an employee to resign and collect. Defendant claims that some action by it, such as termination, was required. The plain language of the 2009 letters is clear. The phrase "ended in any manner" includes resignation. No provision in the 2009 letters requires action by defendant to end the employment.

a separation-pay policy. *Id.* at 581. Although the plaintiff was on inactive payroll, he was in "no position to comply with or give consideration for an offer of" separation pay. *Id.* Absent sufficient consideration, this Court held that the plaintiff was not entitled to separation pay and that the trial court had properly granted summary disposition for the defendant employer. *Id.* The plaintiff on disability leave in *Kolka* could not provide consideration for the employer's promise, and plaintiffs here were not required to provide consideration.

In the instant case, defendant's severance-pay policy required no consideration (performance or forbearance) by plaintiffs. Because no consideration was required to accept the severance pay offered in the 2009 letters, no unilateral contract was formed. Instead, the 2009 letters created a policy that could be modified or revoked. As in *Kolka*, there was no event here, such as continued employment for a certain number of years, see *Cain*, 346 Mich at 571, that could result in the vesting of the right of severance payments. Absent a vested right to severance payments, defendant could revoke the policy as it did by letter on June 7, 2011.[3] Therefore, by the time plaintiffs resigned in July 2011, because the severance-pay policy had already been revoked by defendant, contrary to the trial court's conclusion, plaintiffs were not entitled to severance payments.[4]

---

[3] We reject defendant's argument that the 2009 letters limited the severance-pay policy to the restructuring period. The plain language of the letters provided for severance if plaintiffs' employment "ended in any manner in the future." The phrase "in the future" is not limited to the restructuring period. Therefore, even though the 2009 letters were sent to retain key individuals during the restructuring and the restructuring was over, the policy arguably continued until Pendleton sent the June 7, 2011 letters, which ended the policy.

[4] Because of our conclusion that defendant could revoke the severance-pay policy at any time, we need not address defendant's argument that Youngblood lacked the actual authority to bind defendant to *irrevocable* severance-pay contracts.

B

The trial court found that an express contract existed and did not reach plaintiffs' claims in Count II (breach of implied contract) or Count III (promissory estoppel). This Court generally does not review an issue undecided by the trial court unless it is a question of law and all the facts needed for resolution are present. *Candelaria v B C Gen Contractors, Inc*, 236 Mich App 67, 83; 600 NW2d 348 (1999). Because the interpretation of the 2009 letters is a question of law, this Court may review those claims also.

1

Plaintiffs' breach-of-implied-contract claim is derived from the discharge-for-cause doctrine enunciated by *Toussaint v Blue Cross & Blue Shield of Mich*, 408 Mich 579; 292 NW2d 880 (1980). In *Toussaint*, the Michigan Supreme Court held that a provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable, even if the contract is indefinite or not for a definite term. The provision could become part of the contract either (1) by express agreement, oral or written, which required negotiation, or (2) as a result of an employee's legitimate expectations grounded in an employer's policy statements. The Supreme Court in *Toussaint* held that both plaintiffs had presented sufficient evidence of an express agreement. For example, one plaintiff was told that if he was "doing the job," he would not be discharged. The Supreme Court further held that a jury could find that one of the two plaintiffs also had legitimate expectations (or an implied contract) grounded in his employer's written policy statements, set forth in the manual of personnel policies. *Id.* at 597-599.

In *Certified Question*, 432 Mich at 441, the Supreme Court next answered in the affirmative that a written discharge-for-cause personnel policy (an implied contract) could be unilaterally modified by an employer without explicit reservation of that right at the outset. The Supreme Court noted:

> [W]ritten personnel policies are not enforceable because they have been "offered and accepted" as a unilateral contract; rather, their enforceability arises from the benefit the employer derives by establishing such policies.
>
> *   *   *
>
> Under the *Toussaint* analysis, an employer who chooses to establish desirable personnel policies, such as a discharge-for-cause employment policy, is not seeking to induce each individual employee to show up for work day after day, but rather is seeking to promote an environment conducive to collective productivity. [*Id.* at 453-454.]

The Supreme Court concluded that a policy should be a "flexible framework for operational guidance" rather than "a perpetually binding contractual obligation," which would allow businesses to be "adaptable and responsive to change," *id.* at 456, and as such, an employer may unilaterally make changes in a written discharge-for-cause policy, but "reasonable notice of the change must be uniformly given to affected employees," *id.* at 456-457. The Court noted that discharge-for-cause is not a right that can accrue or vest and suggested that employers may not so easily change policies that do accrue or vest. *Id.* at 457.

Our Supreme Court has since declined to extend *Toussaint*'s legitimate-expectations test to a compensation plan: "Were we to extend the legitimate-expectations claim to every area governed by company policy, then each time a policy change took place con-

tract rights would be called into question." *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 531; 473 NW2d 652 (1991) (opinion by Riley, J.).

Again, the trial court did not reach the question whether an implied contract existed. Michigan courts have not extended the legitimate-expectations test to severance-pay policies, and we decline to do so here. Employers should enjoy flexibility in modifying their policies. See *Certified Question*, 432 Mich at 456. But even if we were to conclude that plaintiffs had legitimate expectations of severance payments, defendant properly revoked the severance-pay policy with the June 7, 2011 letters. Pendleton explained that the economic downturn and restructuring that spurred the 2009 letters had ended, so the severance-pay policy was no longer necessary. There has been no allegation by plaintiffs that defendant failed to provide reasonable notice of the June 7, 2011 change. *Id.* at 457. In fact, when plaintiffs were originally hired by defendant, they signed personnel forms that provided that changes to employment, compensation, and benefits could be modified or eliminated at any time upon simple written notice, which they received from Pendleton.[5]

Plaintiffs claim that they rejected the June 7, 2011 letters revoking the severance-pay policy. But no agreement for severance pay existed, and as the Supreme Court in *Certified Question*, 432 Mich at 456, explained, employers may unilaterally make changes to employment policies so they can best adapt to changing business conditions. If plaintiffs were displeased by the change in policy, they were free to resign, but they were

---

[5] A generalized personnel policy could not ordinarily defeat a definitive offer and acceptance for severance, but here, where no contract existed and the policy could be amended at any time, plaintiffs' awareness of such flexibility at the time of hire is notable.

not entitled to severance payments upon their resignation by virtue of an implied contract. Plaintiffs' claim in Count II (breach of implied contract) could not have survived summary disposition.

2

Just as plaintiffs had no legitimate expectations that the severance-pay policy would not be revoked, plaintiffs had no claim in promissory estoppel. The elements of promissory estoppel are

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. [*Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999).]

First, the 2009 letters articulated not a promise, but a severance-pay policy that could be changed at will. Moreover, even if defendant had made a promise by the 2009 letters, before revoking the severance-pay policy, defendant could not have reasonably expected that its revocation of the "promise" by the June 7, 2011 letters would induce plaintiffs to resign within a month and thereafter attempt to collect the severance pay referred to in the "promise." Therefore, plaintiffs' promissory estoppel claim could not have survived summary disposition.

III

In summary, no unilateral contract for severance pay existed, and defendant properly revoked the severance-pay policy on June 7, 2011. Thus, when plaintiffs subsequently resigned, they were not entitled to severance payments. The trial court erred by finding that

defendant breached an express contract to make severance payments to plaintiffs and granting summary disposition in favor of plaintiffs for that breach of contract. In light of the June 7, 2011 letters revoking the policy, plaintiffs' claims in Counts II (breach of implied contract) and III (promissory estoppel) also could not have survived summary disposition.

We reverse the trial court's grant of summary disposition to plaintiffs on Count I (breach of express contract), denial of defendant's motion for summary disposition, and dismissal of plaintiffs' remaining claims as moot. We vacate the trial court's award of damages to plaintiffs and remand to the trial court for entry of an order granting summary disposition in favor of defendant on all counts. We do not retain jurisdiction.

Defendant, as the prevailing party on appeal, may tax costs pursuant to MCR 7.219.

O'CONNELL, P.J., and METER, J., concurred with WILDER, J.