*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

DEAN FRICK, and all others similarly situated,

      Plaintiff-Appellee/Cross-Appellant,

v

HURLEY MEDICAL CENTER,

      Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
August 13, 2020

No. 346747
Genesee Circuit Court
LC No. 17-110203-CK

---

MARY BLAND,

      Plaintiff-Appellee/Cross-Appellant,

and

LINDA DEFLORIO, LAWRENCE DALY,
DANIEL GEORGE, FAY LIST, and SHARON
INGRAM,

      Plaintiffs-Appellees,

v

BOARD OF HOSPITAL MANAGERS OF
HURLEY MEDICAL CENTER, also known as
HURLEY MEDICAL CENTER,

      Defendant-Appellant/Cross-Appellee.

No. 347533
Genesee Circuit Court
LC No. 17-110265-CK

---

Before: MURRAY, C.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

-1-

In these consolidated appeals, plaintiffs sued their former employer, defendant Hurley Medical Center, for breach of contract, promissory estoppel, and unjust enrichment after defendant unilaterally modified their retiree healthcare benefits. In Docket No. 346747, defendant appeals by leave granted an order granting its motion for summary disposition as to plaintiff[1] Dean Frick's breach of contract claim, but denying the same motion as to plaintiff's promissory estoppel and unjust enrichment claims. We reverse the denial of the motion because defendant is entitled to summary disposition of all claims. Plaintiff Frick cross-appeals the same order denying his motion for summary disposition, which we affirm.

In Docket No. 347533, defendant appeals by leave granted an order granting its motion for summary disposition with respect to plaintiff Mary Bland, but denying its motion with respect to plaintiffs Linda DeFlorio, Lawrence Daly, Daniel George, Fay List, and Sharon Ingram. We reverse the denial of the motion as to the breach of contract claims brought by DeFlorio, Daly, List, and Ingram, but affirm as to the breach of contract claim brought by plaintiff George. We also reverse the denial of the motion as to the promissory estoppel claims brought by all of these plaintiffs because the motion should have been granted in that regard. Plaintiff Bland cross-appeals the same order granting defendant's motion with respect to her, which we affirm.

## I. BACKGROUND

Plaintiffs were all classified as non-union "exempt" employees and retired between the years 1998 and 2008.[2] Plaintiffs alleged that defendant promised to pay either all or a specific portion of their retiree healthcare insurance costs—depending on the date of their exempt status and the date of retirement—for a certain level of healthcare benefits, in perpetuity. Plaintiffs asserted that these promises to pay unmodified lifetime healthcare benefits were contained in various employee handbooks, including defendant's Exempt Employee Handbook dated January 1995, defendant's Exempt Employee Handbook dated July 1999, defendant's Exempt Employee Handbook dated January 2009, and the City of Flint Employees Retirement System handbooks dated October 1998, April 2000, April 2003, and August 2004. Plaintiff Bland retired in 1998. Plaintiffs List, Ingram, DeFlorio, and Daly retired in 2001, 2002, 2003, and 2004 respectively. Plaintiff George retired in 2008 via a separation agreement dated November 30, 2007, as detailed below. Plaintiff Frick retired in June 2008, but relied on defendant's January 2009 Exempt Employee Handbook which contained the policies and conditions of employment effective as of December 2007.

### A. RELEVANT PROVISIONS OF THE DOCUMENTS AT ISSUE

**Defendant's January 1995 Exempt Employee Handbook [1995 Handbook]**

---

[1] Plaintiff Frick filed his complaint on his own behalf and on behalf of the class of members of similarly-situated retired former exempt employees of defendant. For ease of reference, we will refer to these plaintiffs in the singular as "plaintiff" or "plaintiff Frick," as the representative of the class.

[2] Plaintiffs were also not members of a collective bargaining unit.

The introductory page to the 1995 Handbook states that its "purpose is to clarify policies and practices which will govern your activities, rules and regulations which affect your conditions of employment and benefits provided by Hurley Medical Center." The introductory page states that defendant's department of human resources [HR] will routinely review the policies and try to notify employees of changes as they occur, but "you may review the official copy of the Exempt Employees Handbook, with the latest revisions, by contacting the Human Resources Department."

With regard to retirement healthcare benefits, the 1995 Handbook states in relevant part:

Upon retirement, exempt employees who were members of the retirement system and were in an exempt classification prior to 3/1/89, shall have their health insurance (BCBS, Health Plus, Blue Care Network), which is in effect on the date of retirement, continued for themselves and their dependents, and their surviving spouse and dependents if pension benefits continue under a survivorship option. At age 65 and over, Hurley Medical Center will provide Medicare Supplemental Coverage.

Upon retirement, exempt employees who became members of the retirement system, or were appointed to an exempt classification on or after 3/1/89, shall have their health insurance (BCBS, Health Plus, Blue Care Network), in effect at the time of their retirement, continued for themselves and their dependents, and their surviving spouse and dependents if pension benefits continue under a survivorship option. The Medical Center will provide this coverage up to a maximum monthly premium of $225, to age 65. At age 65 and over, Hurley Medical Center will provide Medicare Supplemental Coverage up to a monthly premium of $110 per month. The retiree or the surviving spouse will be responsible for the difference between Hurley's payment and the required monthly premium due, if any.

## Defendant's July 1999 Exempt Employee Handbook [1999 Handbook]

The introductory page to the 1999 Handbook states that its "purpose is to clarify policies and practices, which will govern your activities, rules and regulations which affect your conditions of employment and benefits provided by Hurley Medical Center." The introductory page states that defendant's department of human resources [HR] will routinely review the policies and try to notify employees of changes as they occur, but "you may review the official copy of the Exempt Employees Handbook, with the latest revisions, by contacting the Human Resources Department."

With regard to retirement healthcare benefits, the 1999 Handbook states in relevant part:

**f. Retiree Health Insurance**

1) Exempt employees who were members of the retirement system and were in an exempt classification **prior to 3/1/89,** shall have their health insurance equivalent to that which is in effect on the date of their retirement, provided and continued for themselves and their dependents, and their surviving spouse and dependents, if pension benefits continue under a survivorship option. At age 65 and over, Hurley Medical Center will provide Medicare Supplemental Coverage.

2) Exempt employees who became members of the retirement system, or were appointed to an exempt classification on or **after 3/1/89**, shall have their health insurance, equivalent to that which is in effect on their date of retirement, continued for themselves and their dependents, and their surviving spouse and dependents, if pension benefits continue under a survivorship option, as provided. The Medical Center will provide this coverage up to a maximum monthly premium of $275, to age 65. At age 65 and over, the Medical Center will provide Medicare Supplemental Coverage up to a monthly premium of $160 per month. The retiree or the surviving spouse is responsible for the difference between the Hurley allowance and any required monthly premium due.

The 1999 Handbook stated that the standard health insurance coverage for exempt employees was Blue Cross/Blue Shield PPO [BC/BS PPO] health insurance coverage, which defendant "will provide, without charge." Employees could opt for other plans such as traditional BC/BS or HMOs but would have to pay the difference in premium from the standard BC/BS PPO.

## Defendant's January 2009 Exempt Employee Handbook [2009 Handbook]

The introductory page to the 2009 Handbook contains the following paragraph regarding possible revisions:

This handbook is intended to provide exempt employees with a summary of the Medical Center's policies, practices, work rules, and benefits. Human Resources will routinely review the enclosed policies and make revisions as required by management, federal and/or state laws. As the policies contained in this handbook may change at any time, changes shall supersede any handbook provisions.

With regard to retirement healthcare benefits, the 2009 Handbook states in relevant part:

**f. Retiree Health Insurance**

1) Exempt employees who were members of the retirement system and were in an exempt classification prior to **3/1/89,** shall have their health insurance (equivalent to BASE PLAN which is in effect on the date of their retirement), provided and continued for themselves and their dependents, and their surviving spouse and dependents, if pension benefits continue under a survivorship option. At age 65 and over, Hurley Medical Center will provide Medicare Supplemental Coverage.

2) Exempt employees who became members of the retirement system and were appointed to an exempt classification, or separated from service and retired as an exempt employee on or after **3/1/89**, shall have their health insurance (equivalent to the BASE PLAN which is in effect on their date of retirement) continued for themselves and their dependents, and their surviving spouse and dependents, if pension benefits continue under a survivorship option, as provided. Effective December 1, 2007 the Medical Center will provide an allowance for this coverage of up to a maximum monthly premium of $405, to age 65. At age 65 and over, the Medical Center will provide Medicare Supplemental Coverage up to a monthly premium of $290 per month. The retiree or the surviving spouse is responsible for

the difference between the Hurley allowance and any required monthly premium due.

The 2009 Handbook stated that the standard health insurance coverage provided was Blue Cross/Blue Shield Community Blue PPO [BC/BS PPO] health insurance plan (i.e., the BASE PLAN), which defendant would provide subject to specified premium sharing. Active eligible employees could opt for other plans such as traditional BC/BS or HMOs but would have to pay the difference in premium from the base plan, BC/BS Community Blue PPO.

### City of Flint's October 1998 Employees Retirement System Handbook

The October 1998 City of Flint Employees Retirement Handbook included this introductory paragraph on its title page:

> This handbook is designed to provide employees with general information regarding their benefits. It is not a legal document. Specific questions should be directed to the Payroll and Retirement Office of the City of Flint.

With regard to retirement healthcare benefits, the 1998 City Handbook states in relevant part:

> Generally, you will retire with the same level of health coverage you enjoyed as an active employee as determined by the union contract or exempt employee agreement. For employees who are eligible for Medicare, at age 65, your coverage will change to complimentary coverage. This means that your coverage through your employer will make up the difference between the coverage you have currently and what Medicare will cover when you turn 65.

> * * *

> For exempt employees of the Medical Center, health coverage is provided per the exempt employee policies in effect at the time of retirement.

### City of Flint's April 2000 Employees Retirement System Handbook

The April 2000 City of Flint Employees Retirement Handbook included this introductory paragraph on its title page:

> This handbook is designed to provide only general information regarding retirement benefits. It is not intended as a legal document. All issues and processes are governed by official documents filed with the City of Flint. Specific questions should be directed to the Payroll and Retirement Office of the City of Flint.

With regard to retirement healthcare benefits, the 2000 City Handbook states in relevant part:

> When you retire under a normal service retirement, if eligible, you will retire with the same level of health coverage that you enjoyed as an active employee, as determined by the union contract or exempt employee policies in effect at the time you retire.

For exempt employees of the Medical Center, the health coverage is provided per the exempt employee polices that are in effect at the time of retirement.

## City of Flint's April 2003 Employees Retirement System Handbook

The April 2003 City of Flint Employees Retirement Handbook included this introductory paragraph on its title page:

This handbook is designed to provide employees with general information regarding their benefits. It is not a legal document. Specific questions should be directed to the Retirement Office of the City of Flint at . . . .

With regard to retirement healthcare benefits, the 2003 City Handbook states in relevant part:

Generally, you will retire with the same level of health coverage you enjoyed as an active employee as determined by the union contract or exempt employee agreement. For employees who are eligible for Medicare, at age 65, your coverage will change to complimentary coverage. This means that your coverage through your employer will make up the difference between the coverage you have currently and what Medicare will cover when you turn 65.

* * *

For exempt employees of the Medical Center, health coverage is provided per the exempt employee policies in effect at the time of retirement.

## City of Flint's August 2004 Employees Retirement System Handbook

The August 2004 City of Flint Employees Retirement Handbook included this introductory paragraph on its title page:

This handbook is designed to provide employees with general information regarding their benefits. It is not a legal document. Specific questions should be directed to the Retirement Office of the City of Flint at . . . .

With regard to retirement healthcare benefits, the 2004 City Handbook states in relevant part:

Generally, you will retire with the same level of health coverage you enjoyed as an active employee as determined by the union contract or exempt employee agreement. For employees who are eligible for Medicare, at age 65, your coverage will change to complimentary coverage. This means that your coverage through your employer will make up the difference between the coverage you have currently and what Medicare will cover when you turn 65.

* * *

For exempt employees of the Medical Center, health coverage is provided per the exempt employee policies in effect at the time of retirement.

**Plaintiff Daniel George's November 30, 2007 separation agreement**

Plaintiff George, previously employed by defendant as a vice president, retired from defendant's employment effective January 2, 2008 pursuant to a separation agreement signed November 30, 2007. That agreement states that it is a full, final, and complete release of any and all claims. That agreement states that defendant will provide George with a severance package including "retiree health care benefits as such health care benefits exist as of October 1, 2007 . . . ." The separation agreement also states that all parts of the severance package "shall be deemed to constitute consideration paid to the Employee in exchange for his release of the Employer from liability for damages claimable by Employee under any state or federal statutes and/or any State of Michigan or Federal common law tort or contract doctrines, and shall be referred to hereinafter as 'separation benefit.' " Paragraph 12 of the separation agreement contains the following relevant merger language:

> This Agreement contains the sole, complete and entire agreement and understanding of the parties hereto concerning the matters contained herein and may not be altered, modified or changed in any manner except by writing duly executed by the undersigned parties. No statements, promises, representations, other than those expressly set forth herein, have been made by any party to the other, and no party is relying on any representation other than those expressly set forth herein. . . .

## B. DEFENDANT'S DECISION TO REVISE RETIREE BENEFITS

In a letter dated October 2017 defendant informed plaintiffs and its other retirees that it had "made every effort to provide you and your family an extremely robust retirement benefit plan at no cost to you." However, defendant stated, it was necessary for it to "revise what benefit plan the Medical Center is able to provide as a fully paid option." Defendant's letter informed its retirees that "[e]ffective January 1 [2018], the Blue Cross Blue Shield EPO (Exclusive PPO) Plan that is provided to our active employees will be the fully paid option available." That new BCBS EPO plan offered less coverage than the old PPO plan. The letter also informed retirees that they could continue coverage under their existing retiree health insurance plan, but that would require an increased cost share from the retiree. For example, for some retirees, continuing with the existing retiree health insurance plan under the BCBS PPO would cost $453.31 for two-person coverage, as opposed to the previous premium share of $40 per month.

## C. PROCEDURAL HISTORY

Until defendant notified them that it was modifying its healthcare benefits for retirees, all plaintiffs were receiving the same healthcare benefits at the same cost, if any, as of the date they retired. In response to defendant's October 2017 letter, plaintiffs filed their legal actions. In Count I, plaintiffs brought breach of contract claims, alleging that they had contractual rights arising from defendant's policy handbooks, communications, and employment contracts, as well as from the City's local ordinance and policy handbooks, establishing their entitlement to unmodifiable

lifetime retiree healthcare benefits. In Count II, plaintiffs brought promissory estoppel claims, alleging that defendant's policy handbooks and human resources' representations included promises that retirees would receive unmodifiable retiree healthcare benefits for their lifetimes and such promises were intended to coerce employees to elect early retirement or refrain from seeking increased salaries and pensions—which, in fact, occurred. In Count III, plaintiff Frick brought an unjust enrichment claim, alleging that defendant realized substantial financial savings and free labor as a result of its promises and, to avoid injustice, the trial court must enforce defendant's promise to provide unmodifiable lifetime healthcare benefits to retirees.

Subsequently, defendant moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that none of the plaintiffs had shown any enforceable contract where defendant agreed to provide lifetime retiree healthcare benefits to plaintiffs at a fixed level and cost. Specifically, the plain language of the handbooks merely explained defendant's current policies and practices and were purely informative in nature. See, e.g., *AFT Mich v Michigan*, 303 Mich App 651; 846 NW2d 583 (2014). The handbooks did not create any actionable promises. In other words, they contained no contractual language and certainly did not create a perpetually-binding contractual obligation to provide retirees with lifetime healthcare benefits at a fixed level and cost. Further, the handbooks all contained reservation-of-rights clauses that allowed defendant to alter or modify its retiree healthcare benefits at any time. While plaintiffs presented their lay opinions as to how they interpreted their retirement terms, those opinions could not create contract rights that never existed. And as to George's separation agreement, defendant argued, it only indicated that George would have access to retiree healthcare benefits—it did not state who would pay for those benefits. Further, as to Bland, defendant argued, it had paid in full for Bland's healthcare benefits and she was currently receiving Medicare coverage. Defendant further argued that the claims for promissory estoppel and unjust enrichment must fail because plaintiffs presented no evidence of a specific promise made by defendant to plaintiffs that plaintiffs reasonably relied upon to their detriment.

In their responses, as well as in plaintiff Frick's cross-motion for summary disposition and for class certification, plaintiffs argued that defendant's written policy statements contained in the handbooks gave rise to a contractual obligation on defendant's part and changes made to plaintiffs' vested rights gave rise to breach of contract claims. See *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 529; 473 NW2d 652 (1991); *Cain v Allen Elec & Equip Co*, 346 Mich 568; 78 NW2d 296 (1956). Plaintiffs argued that defendant "clearly promised" to provide retirees with unmodifiable lifetime healthcare benefits through various documents, including through the 1999 Exempt Employee Handbook and city handbooks. Further, plaintiff George had specifically negotiated a separation agreement that included lifetime healthcare benefits at no cost to him. And, contrary to defendant's claim, Bland was actually responsible for greater increased cost-sharing than she had been promised under the terms of the 1995 Exempt Employee Handbook. Further, plaintiffs argued, the documents did not contain specific reservation-of-rights language. The language presented in the handbooks merely stated that as changes occurred, the handbook would be revised—which was insufficient to disavow the creation of a contract. And, plaintiffs argued, because they relied on the promises made in the various handbooks, defendant was liable under a theory of promissory estoppel. Moreover, plaintiff Frick argued, to prevent unjust enrichment at his expense, a contract should be implied between the parties.

Ultimately, the trial court granted plaintiff Frick's motion for class certification but denied his cross-motion for summary disposition. The trial court granted defendant partial summary disposition of plaintiff Frick's claims, holding that he could not prove a contract based on the 2003 City of Flint handbook because it contained a disclaimer stating it was not a legal document—although promissory estoppel and unjust enrichment claims could be pursued. But because defendant's 1999 Exempt Employee Handbook contained no such disclaimer, questions of fact existed as to whether it could be construed as contractual in nature; thus, defendant's motion for summary disposition was denied in that regard as to Frick's case. The trial court denied defendant's motion for summary disposition as to plaintiff George because he had a separation agreement that qualified as a contract. The trial court granted defendant's motion for summary disposition as to plaintiff Bland because she was covered under the "1974 policy" and "it was taking care of her in the way she expected . . . ." Defendant's motion for summary disposition was denied as to plaintiffs DeFlorio, Daly, List, and Ingram apparently on the grounds that defendant's handbooks lacked specific reservation-of-rights language and there were factual issues as to whether the documents relied upon could be construed as contractual in nature.

Defendant sought leave to appeal in both cases, arguing that it was entitled to summary disposition as to all claims in both cases because no genuine issue of material fact existed that a contract did not arise from the various policy handbooks and such handbooks did not include any promises of unmodifiable lifetime retiree healthcare benefits. Accordingly, defendant argued, plaintiffs' breach of contract, promissory estoppel, and unjust enrichment claims should have been dismissed by the trial court. We granted leave to appeal and consolidated the cases. *Bland v Hurley Med Ctr*, unpublished order of the Court of Appeals, entered April 25, 2019 (Docket No. 347533); *Frick v Hurley Med Ctr*, unpublished order of the Court of Appeals, entered April 25, 2019 (Docket No. 346747). Frick cross-appeals the denial of his motion for summary disposition, and Bland cross-appeals the order granting defendant summary disposition of her claims.

## II. VESTED RETIREE HEALTHCARE BENEFITS

In both cases, defendant argues that the trial court erred by ruling that there were genuine issues of material fact regarding whether it agreed to provide unmodifiable lifetime retiree healthcare benefits to plaintiffs. Conversely, Frick and Bland argue that the evidence establishes that they had contracts with defendant—created primarily by various handbooks—that entitled them to lifetime retiree healthcare benefits that could not be unilaterally modified by defendant. For the reasons set forth below, we agree with defendant and disagree with plaintiffs Frick and Bland.

## A. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Because the parties submitted evidence beyond the pleadings, the trial court appropriately reviewed the parties' motions under MCR 2.116(C)(10). See *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 776-777; 910 NW2d 666 (2017). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and should be granted if, after consideration of the evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue regarding any material fact exists. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934

NW2d 665 (2019). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

"Whether a contract exists is a question of law that this Court reviews de novo." *AFT Mich*, 303 Mich App at 659. Further, "the proper interpretation of contracts and the legal effect of contractual provisions are questions of law subject to review de novo." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012). To the extent that we must interpret a municipal ordinance, ordinances are treated as statutes for the purpose of interpretation, and therefore, presents a question of law that we review de novo. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008).

## B. ANALYSIS

Plaintiffs alleged that they were contractually entitled to receive unmodifiable lifetime healthcare benefits when they retired and that defendant's decision to change those benefits constituted breach of contract. To establish a breach of contract claim, a party must show by a preponderance of the evidence that there was a contract, which was breached, and resulted in damages. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). In this case, the dispute is whether there was a contract.

Plaintiffs claim that various handbooks gave rise to employment contracts between them and defendant. With regard to contracts relating to compensation for present or past employment, our Supreme Court has held: "The terms of an employment contract regarding compensation must be express promises, either oral or written; an employer's policy statements may not form the basis for any rights to specific forms or amounts of compensation." *AFT Mich v Michigan*, 497 Mich 197, 236; 866 NW2d 782 (2015). An employer's " 'policy' is commonly understood to be a flexible framework for operational guidance, not a perpetually binding contractual obligation." *In re Certified Question*, 432 Mich 438, 456; 443 NW2d 112 (1989). An employer's policy gives rise to a contractual obligation "only when the circumstances (e.g., the language in the handbook itself, or an employer's oral statements or conduct) clearly and unambiguously indicate that the parties so intended." *Rood v General Dynamics Corp*, 444 Mich 107, 137; 507 NW2d 591 (1993). In other words, a "legitimate-expectations" theory that may apply in the context of wrongful discharge cases is not applicable in the "arena of compensation policies." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 214-215; 933 NW2d 363 (2019), citing *Dumas*, 437 Mich at 529. Courts also cannot imply lifetime promises of contribution-free retirement health insurance benefits from ambiguous writings; such benefits must be explicitly provided for in the contract to be part of the contract. *M&G Polymers USA LLC v Tackett*, 574 US 427, 441; 135 S Ct 926; 190 L Ed 2d 809 (2015); *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500, 512; 879 NW2d 897 (2015).

In this case, the various handbooks relied upon by plaintiffs are simply not employment contracts between them and defendant under Michigan law. And they do not contain any express or specific promise by defendant guaranteeing that it would provide retired employees with healthcare benefits at a specific level for a specific cost for their lifetimes. Defendants Exempt Employee Handbooks (from 1995, 1999, and 2009) are merely informational guides which expressly state that their purpose was to "clarify policies and practices" of the institution, that those

policies were subject to change, that any such changes were available for review by contacting the Human Resources Department, and that such changes would supersede any prior handbook provisions. The City of Flint's Employees Retirement System Handbooks (1998, 2000, 2003, and 2004) are also merely informational guides and expressly state that the handbook "is not a legal document," i.e., a contract. Similar to the handbooks and informational pamphlets at issue in *AFT Mich*, 303 Mich App at 662, it is clear that defendant's exempt employee handbooks and the City's handbooks were merely intended to provide guidance and information to defendant's employees; defendant did not intend to be contractually bound.

And to the extent that plaintiffs claim that defendant was obligated by the City of Flint Ordinance, Chapter 35, Article IV, to provide exempt employees with unmodifiable lifetime retiree healthcare benefits—ostensibly supporting plaintiffs' argument that the various handbooks were contracts—we reject such claim. The Flint ordinance at issue, Section 35-81(b), provides, in pertinent part:

> (2) a. Employees not represented by recognized bargaining units and employed by the Board of Hospital Managers shall have, upon retirement, except for any period during which retirement is deferred and except for any period during which he or she may be eligible for hospitalization coverage through a subsequent employer, coverage maintained to attainment of age 65.

> b. Commencing at age 65 the coverage to be provided shall be Medicare Supplementary. This coverage shall be continued for the employee following retirement.

> c. Employees not represented by recognized bargaining units and employed by the Board of Hospital Managers who are hired, promoted, or transferred into an exempt classification after March 1, 1989, upon retirement, receive health insurance continuation benefits paid for by the Hurley Medical Center at rates established by the Board of Hospital Managers. The retiree shall be responsible for payment of the difference between the Hurley Medical Center's payment and the health insurance premium charge, if any.

Considering its plain language, as we must, noticeably absent from the ordinance is any language preventing defendant from altering the level of coverage or the cost for healthcare coverage. The parties do not dispute that defendant has consistently provided healthcare coverage to plaintiffs. Accordingly, to the extent that plaintiffs argue that defendant was required under the terms of the Flint Ordinance to provide them with unmodifiable lifetime retiree healthcare benefits—and thus the relevant handbooks contained that promise—we conclude that the argument is without merit.

In summary, considering all of the relevant documents, plaintiffs' contention—including Frick's and Bland's contentions—that the handbooks gave rise to contractual obligations that vested in plaintiffs the right to unmodifiable lifetime retiree healthcare benefits is untenable and without merit. Thus, defendant was entitled to summary disposition as to the breach of contract claims raised by plaintiff Frick, and similarly situated class members, as well as by plaintiffs DeFlorio, Daly, List, and Ingram. Accordingly, the trial court's denial of defendant's motion as to the breach of contract claims brought by these plaintiffs is reversed. But the trial court properly

granted summary disposition as to breach of contract claim raised by plaintiff Bland,[3] albeit for a different reason.

However, plaintiff George had a specific separation agreement, i.e., a contract. As set forth above, that agreement expressly states that defendant will provide George with a severance package which included "retiree health care benefits as such health care benefits exist as of October 1, 2007 . . ." (Agreement, ¶ 1, p 1.) This was deemed to constitute part of the consideration paid to George in exchange for his release of defendant from liability and is a specific written promise to provide George with the same retirement healthcare benefits as he received on October 1, 2007. Further, as set forth above, this same agreement contains specific language stating that those terms cannot be changed except by a written document executed by both parties. Accordingly, defendant's motion for summary disposition as to George's breach of contract claim was properly denied by the trial court.

## III. PROMISSORY ESTOPPEL AND UNJUST ENRICHMENT

In both cases, defendant argues that the trial court erred by not dismissing plaintiffs' claims for promissory estoppel and plaintiff Frick's claim of unjust enrichment. Conversely, in their cross-appeals, plaintiffs Frick and Bland argue that prima facie claims of promissory estoppel and unjust enrichment were established. We agree with defendant and disagree with plaintiffs Frick and Bland.

## A. STANDARDS OF REVIEW

The applicability of a legal doctrine, such as promissory estoppel, is a question of law that we review de novo. *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001). Whether plaintiff Frick can maintain a cause of action for unjust enrichment is also a question that we review de novo.[4] *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22; 831 NW2d 897 (2012).

## B. ANALYSIS

The elements of promissory estoppel are:

(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. [*Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 83; 854 NW2d 521 (2014), quoting *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999).]

---

[3] We note that the trial court concluded that plaintiff Bland retired under the terms of the 1974 exempt employee personnel policy but Bland confirmed that she retired in 1998, under the terms of defendant's 1995 Exempt Employee Handbook. Thus, the trial court erred in that regard.

[4] Plaintiff Bland's complaint did not include a claim of unjust enrichment.

The hallmark of promissory estoppel is a promise that is clear and definite. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). In contrast, statements that are "indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct, cannot serve as the foundation for an actionable reliance." *Bodnar*, 327 Mich App at 227 (quotation marks and citation omitted). The doctrine of promissory estoppel will only apply if the facts underlying the application of the doctrine are not questioned, and the wrong sought to be prevented cannot be doubted. *Id.* (citation omitted).

As we have already concluded, defendants Exempt Employee Handbooks (from 1995, 1999, and 2009), and the City of Flint's Employees Retirement System Handbooks (1998, 2000, 2003, and 2004) in effect at the time plaintiffs retired did *not* specifically promise unmodifiable lifetime retiree healthcare benefits to plaintiffs. Instead, the handbooks were merely general and informational in nature, describing the nature of the retiree healthcare benefits in effect at the specific times. They simply did not contain clear and definite promises of unmodifiable lifetime retiree healthcare benefits to the extent that defendant would have reasonably expected to induce "action of a definite and substantial character" on the part of plaintiffs. *Klein*, 307 Mich App at 83; *Derderian*, 263 Mich App at 381. Accordingly, plaintiffs' claims of promissory estoppel fail because they cannot establish the first element—that a definite and clear promise was made by defendant to provide them with unmodifiable lifetime retiree healthcare benefits.

Additionally, plaintiffs have not presented evidence to support a finding that they relied on an alleged promise of unmodifiable lifetime retiree healthcare benefits to the extent that an injustice would result if the alleged promises were not enforced. See *Klein*, 306 Mich App at 83. For example, Bland's deposition testimony does not yield any indication that her decision to retire in 1998 was motivated by a belief that she would receive unmodifiable retiree healthcare benefits for her lifetime. Similarly, while List testified that she attended a seminar at work where she learned that she could retire after about 25 years and receive her pension as well as healthcare benefits, her testimony does not reflect that the alleged promise of lifetime retiree healthcare benefits was what motivated her to retire. Instead, List testified that she was ready to move into a more clinical position, which is what led to her retiring from defendant's employment. Moreover, while DeFlorio testified very generally that she had heard from Bland that exempt employees working for defendant before DeFlorio started working for defendant in 1977 gave up unspecified pay raises so that they would receive free healthcare benefits, her testimony does not otherwise support a conclusion that she was induced to retire on the basis of an alleged promise for unmodifiable lifetime retiree healthcare benefits. Notably, DeFlorio was not aware of any documents that confirmed that exempt employees had foregone pay increases in exchange for such lifetime retiree healthcare benefits. Additionally, Ingram testified that after 30 years of working for defendant, she calculated the costs of working, such as clothing and transportation, and ultimately decided it would be a better decision to retire and take on a part-time job.

While Ingram also recalled that Jay Kitson, a vice president of human resources, provided her with a copy of written correspondence that he wrote to Ellen Zimmerman, Director of Retirement for the city of Flint in January 1993, which stated that exempt retirees would be provided healthcare benefits on retirement, and Ingram stated that it was "helpful" and "wonderful" to know that she would have her healthcare paid for in retirement, the record does not otherwise indicate that a promise of lifetime retiree healthcare benefits swayed Ingram's decision to retire. Similarly, while Daly testified generally that he was aware of the healthcare benefits he

would receive once he retired, his testimony does not otherwise support a conclusion that he was induced to retire on the basis of an alleged promise of unmodifiable lifetime retiree healthcare benefits. Moreover, Frick agreed with defense counsel that he retired in 2008 because it was a good time to retire. He also believed he would receive retiree healthcare benefits and he wanted to "get out while the getting was good." But it does not appear from Frick's testimony that the alleged promise of lifetime retiree healthcare benefits in fact induced Frick to retire, because he relayed that he began to look into and inquire about his retirement options and benefits when he reached the 25-year mark of employment with defendant.

Accordingly, the record does not support plaintiffs' contention that genuine issues of material fact exist concerning their promissory estoppel claims. They have not shown the "promise" necessary to support the claims, and further, the evidence does not support a conclusion that their decisions to retire were made in reliance on any such alleged promise by defendant to provide unmodifiable lifetime retiree healthcare benefits. See *Klein*, 306 Mich App at 83. Moreover, the facts of these cases are not such that plaintiffs' claims for promissory estoppel should be allowed to proceed to avoid injustice, particularly considering that all of the plaintiffs are still receiving healthcare benefits from defendant, just not the same exact benefits at the same exact cost as when they retired. See *id*. Therefore, the trial court erred in denying defendant's motion for summary disposition of plaintiffs' promissory estoppel claims.

Turning to Frick's unjust enrichment claim, in *Wright v Genesee Co*, 504 Mich 410, 417-418; 934 NW2d 805 (2019), our Supreme Court explained:

> Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another. Restatement Restitution, 1st, § 1, comment a, p. 12. It is grounded in the idea that a party "shall not be allowed to profit or enrich himself inequitably at another's expense." *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952) (quotation marks and citation omitted). A claim of unjust enrichment can arise when a party "has and retains money or benefits which in justice and equity belong to another." *Id*. (quotation marks and citation omitted).

The appropriate remedy for a successful claim of unjust enrichment is restitution. *Wright*, 504 Mich at 418. To establish a claim of unjust enrichment, a plaintiff must show: "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Invest, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013).

Initially, Frick does not explain what benefit defendant received from Frick or the other members of the class. We are left to speculate that the substance of Frick's claim is that defendant received a benefit from Frick and the other class members because of their work for defendant, ostensibly in exchange for the alleged promise of unmodifiable lifetime retiree healthcare benefits. However, Frick has not established a genuine issue of material fact regarding any inequity or injustice to Frick or other class members arising from their employment by defendant, particularly considering Frick's acknowledgment that he is still receiving retiree healthcare benefits from defendant, but must contribute a higher monthly premium. Accordingly, the trial court erred by denying defendant's motion for summary disposition with regard to the claim of unjust enrichment by Frick and other class members.

## IV. CONCLUSION

In Docket No. 346747, we reverse the trial court's order denying defendant's motion for summary disposition of plaintiffs' breach of contract, promissory estoppel, and unjust enrichment claims. Defendant is entitled to summary dismissal of this action in its entirety. Thus, we affirm the trial court's order denying plaintiff Frick's motion for summary disposition.

In Docket No. 347533, we reverse the trial court's order denying defendant's motion for summary disposition of the breach of contract claims brought by plaintiffs DeFlorio, Daly, List, and Ingram. We affirm the portion of the trial court order denying defendant summary disposition of plaintiff George's breach of contract claim. We likewise affirm the portion of the trial court order granting defendant summary disposition with respect to plaintiff Bland's breach of contract claim. We also reverse the trial court order denying defendant's motion for summary disposition of the promissory estoppel claims as to all plaintiffs in this case.

Accordingly, only plaintiff George's breach of contract claim in Docket No. 347533 is remanded for continued proceedings.

Affirmed in part, reversed in part, and remanded for entry of judgment in favor of defendant as to all plaintiffs except plaintiff George and for further proceedings as to George's breach of contract claim, only. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle